**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**JOY TECHNOLOGIES, INC. and International Association of Machinists and Aerospace Workers Local 1842 of District Local No. 83, AFL–CIO, Respondents.**

No. 92–3233.

United States Court of Appeals, Third Circuit.

Argued Dec. 15, 1992.

Decided March 31, 1993.

Aileen A. Armstrong, David Seid (argued), Charles Donnelly, Jerry M. Hunter, Yvonne T. Dixon, Nicholas E. Karatinos, Peter D. Winkler, Fred L. Cornnell, N.L.R.B., Washington, DC, for petitioner.

R. Stanley Mitchel, Rosen, Schmidt, Hasley & DiSalle, Pittsburgh, PA, for respondent, Joy Technologies, Inc.

Richard Lipsitz, John A. Collins (argued), Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, Buffalo, NY, for respondent, Local 1842, Intern. Ass'n of Machinists and Aerospace Workers of Dist. Local No. 83, AFL–CIO.

Before: SLOVITER, Chief Judge, GREENBERG, Circuit Judge, and POLLAK, District Judge [*]

## OPINION OF THE COURT

SLOVITER, Chief Judge.

The National Labor Relations Board (Board) petitions this court for enforcement of its decision and order of January 15, 1992, finding that respondents, Joy Technologies, Inc. (Employer) and the International Association of Machinists and Aerospace Workers, Local 1842 of District Lodge No. 83, AFL–CIO (Union), engaged in unfair labor practices in violation of the National Labor Relations Act (NLRA) by maintaining and enforcing an unlawful superseniority clause in their collective bargaining agreement.

### I.

### FACTS AND PROCEDURAL HISTORY

The Employer, a manufacturer and seller of coal mining equipment, operates three plants in Pennsylvania, two of which (Plant 1 and Plant 2) are relevant to this case. Prior to any of the actions relevant to this proceeding, Plant 1 had three General Repair Person (GRP) positions divided be-

---

[*] Hon. Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

tween 2 shifts; Plant 2 had one GRP position and only one shift. Employee Randy Beightol was a GRP in Plant 1 before he was laid off and placed in a lower-grade classification as a Cleaning Service Person (CSP) in Plant 2. He also served in Plant 2 as the sole union committeeperson, the elected union representative responsible for administering the collective bargaining agreement, including the handling of grievances.

In the fall of 1989, the retirement of an employee who was a GRP from Plant 1 set in motion a series of personnel shifts which left a vacant GRP position in Plant 1, shift 2. After no current employee bid on the vacant GRP position in Plant 1, the Employer announced its intention to recall Beightol, who was next in line in terms of natural seniority, from his position as a CSP in Plant 2 to the vacant GRP position. Under the applicable provision of the collective bargaining agreement Beightol was required to return to his former classification when it became available.[1] By this time, Beightol had been serving as the union committeeperson in Plant 2 for approximately three years. His service in that capacity was site specific so that if he had assumed the vacant GRP position in Plant 1, he would have lost his ability to function as the union committeeperson for Plant 2.

As the union committeeperson in Plant 2, Beightol was covered by the superseniority provision in section 103 of the collective bargaining agreement granting superseniority to stewards and committeepersons except in certain specified instances. Specifically, section 103 provided that:

> The Union Department *Stewards and the Shop Committee shall head the Seniority List when certified by the Union to the Company*.... When an entire shift in a department is not working, Steward super-seniority on that shift in that department immediately ceases. If and when the Steward's shift would

start, the Steward's super-seniority becomes effective.... The above defined seniority will not apply for the purposes of shift preference, job bidding, machine tool preference, overtime entitlement or scheduling of vacations. When a Committeeman or Steward is certified to represent employees on all or any of the shifts such Steward or Committeeman cannot be displaced by other employees for any reason when certified or where he may have moved by his election to exercise his Company seniority as provided in Item 75 hereof.

App. at 172 (emphasis added).

In light of this superseniority provision, the Union asserted that Beightol was entitled to remain at Plant 2 and displace Bill Knox, the employee who was the sole GRP at Plant 2. The Employer eventually acquiesced in the Union's demand, but it also simultaneously gave Knox a "temporary" GRP position in Plant 2 so that he was not disadvantaged. Shortly thereafter, the Employer announced a shift realignment and transferred one of the GRP positions from Plant 1 to Plant 2. Knox bid on and was awarded this second GRP position in Plant 2.

Walter Burgard, a GRP at Plant 1, filed a grievance contesting the assignment of Beightol to a GRP position in Plant 2, instead of to the initially vacated position in Plant 1, shift 2. His complaint was that as a result of this use of superseniority, his natural seniority was adversely affected, ultimately resulting in his being bumped from shift 1 to shift 2 for a six-week period and being vulnerable to other consequences. The Employer's position was sustained throughout the grievance process.

Burgard filed unfair labor practice charges with the Board against the Union and the Employer, leading to the issuance of unfair labor practice complaints against both parties. The complaints were directed

---

1. Specifically, section 82.E of the collective bargaining agreement provided that:

   Any employee who either when recalled or to avoid layoff, finds it necessary to accept work which is in a different job classification and/or department (except his old depart-

   ment), from his previous regular job classification *must* return to his regular job classification if and when such job classification becomes available.

   App. at 171 (emphasis added).

to both the maintenance of an overly broad and unlawful superseniority clause in the collective bargaining agreement, and its application in this instance.[2] The Administrative Law Judge (ALJ) dismissed the complaints on all counts. He found that the listed exceptions in the superseniority clause saved it from overbreadth and that Beightol's exercise of superseniority was a lawful geographically defensive use of superseniority.

A majority of the Board, by a 2 to 1 decision, disagreed with the ALJ. In an opinion and order issued January 15, 1992, the Board found that the superseniority provision was unlawful on its face and in its application. *See Joy Technologies, Inc.*, 306 N.L.R.B. No. 1, 139 L.R.R.M. (BNA) 1195 (Jan. 15, 1992). Specifically, it concluded that the Employer had engaged in unfair labor practices in violation of sections 8(a)(1), 8(a)(2), and 8(a)(3) of the NLRA[3] (i) by maintaining an overly broad superseniority provision in the collective bargaining agreement; and (ii) by transferring a GRP position from Plant 1 to Plant 2 and filling it with the union committeeperson, Beightol. *Id.* at 2–3, 139 L.R.R.M. at 1197–98. The Board also concluded that the Union had engaged in unfair labor practices in violation of sections 8(b)(1)(A) and 8(b)(2) of the NLRA[4] (i) by maintaining an overly broad superseniority provision in

the collective bargaining agreement; and (ii) by demanding that the Employer transfer a GRP position from Plant 1 to Plant 2 to be filled by the union committeeperson, Beightol. *Id.* The Board ordered that the GRP position be returned to Plant 1 and that all personnel actions that resulted from that transfer be rescinded; that any affected employees be made whole for any loss of earnings; and that the Union and the Employer cease and desist from maintaining and enforcing the superseniority provisions in the collective bargaining agreement. *Id.* at 4, 139 L.R.R.M. at 1198.

The Board petitioned for enforcement of its decision and order. We have jurisdiction under 29 U.S.C. § 160(e) (1988).

## II.

### DISCUSSION

#### A.

##### *Standard of Review*

■ Our review of decisions of the Board is circumscribed. We review factual findings to determine if they are supported by substantial evidence on the record as a whole. *See NLRB v. Rockwood Energy & Mineral Corp.*, 942 F.2d 169, 173 (3d Cir. 1991); *Local 825, Int'l Union of Operating Eng'rs v. NLRB*, 829 F.2d 458, 460 (3d

---

2. The language of the complaints does not correlate precisely with the more detailed description of the actual events provided in the briefs filed in this court. Whereas the complaints state that the Union demanded that Joy Technologies transfer a GRP position to Plant 2, and that Joy Technologies *acquiesced in that demand*, App. at 210, the briefs state that the Union's actual demand was that Beightol be given Knox's GRP position in Plant 2 (which Beightol could claim by exercising a "plant preference" once he was recalled to Plant 1), that Joy Technologies acquiesced in that demand, and that subsequently an additional GRP position was transferred to Plant 2, which Knox then bid on and was awarded.

The Board's decision characterizes the facts in the language of the complaints. Inasmuch as none of the parties have objected to that description, we will assume that it accurately reflects what happened.

3. Section 8(a) of the NLRA provides that:

It shall be an unfair labor practice for an employer—

(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title [section 7] ...;
(2) to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it ...; [or]
(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in a labor organization.
29 U.S.C. §§ 158(a)(1)–(a)(3) (1988).

4. Sections 8(b)(1)(A) and 8(b)(2) of the NLRA provide that:

It shall be an unfair labor practice for a labor organization or its agents—
(1) to restrain or coerce (A) employees in the exercise of rights guaranteed in section 157 of this title [section 7] ...;
(2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) of this section.
29 U.S.C. §§ 158(b)(1)(A), 158(b)(2) (1988).

Cir.1987). We will enforce a Board order that rests on a construction of the NLRA that is not "an unreasonable or unprincipled construction of the statute." *Ford Motor Co. v. NLRB,* 441 U.S. 488, 497, 99 S.Ct. 1842, 1849, 60 L.Ed.2d 420 (1978); *International Bhd. of Elec. Workers, Local 803 v. NLRB,* 826 F.2d 1283, 1287 (3d Cir.1987).

Because there is no challenge to any factual findings of the Board, we will review only to determine whether the Board's determination that the superseniority clause was presumptively unlawful and unlawfully applied rests on a reasonable construction of the NLRA.

### B.

#### *Overbreadth of Superseniority Provision*

It has been the Board's position that superseniority clauses, which give seniority to active union workers over natural seniority, must be scrutinized in light of section 8(a)(3) of the NLRA, which makes it an unfair labor practice for employers "by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization," 29 U.S.C. § 158(a)(3) (1988), and section 8(b)(2), which makes it an unfair labor practice for a union "to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) of this section." *Id.* § 158(b)(2). Any exercise of superseniority raises potential problems under the NLRA because a superseniority clause necessarily ties job rights and benefits to union activities, thereby encouraging union participation.

Nonetheless, the Board has not deemed superseniority clauses *per se* unlawful, a position which we have affirmed. *See D'Amico v. NLRB,* 582 F.2d 820, 825 (3d Cir.1978) ("a superseniority provision in a collective bargaining agreement is not necessarily impermissible under [the NLRA]"). The Board has, however, held that "super seniority clauses which are not on their face limited to layoff and recall are presumptively unlawful, and that the burden of rebutting that presumption (i.e., estab-

lishing justification) rests on the shoulders of the party asserting their legality." *Dairylea Cooperative, Inc.,* 219 N.L.R.B. 656, 658 (1975), *enforced sub nom., NLRB v. Milk Drivers & Dairy Employees, Local 338,* 531 F.2d 1162 (2d Cir.1976).

In the instant case, the Board found (i) that "[b]ecause the superseniority clause on its face permits the committeeman to invoke superseniority for purposes going beyond layoff and recall, it is presumptively unlawful under *Dairylea Cooperative,*" and (ii) that the burden of rebutting this presumption was not met. *Joy Technologies,* 306 N.L.R.B. No. 1, at 2–3, 139 L.R.R.M. at 1197–98. The Employer argues that the superseniority clause on its face is lawful because it explicitly excepts from its applicability "shift preference, job bidding, machine tool preference, overtime entitlement or scheduling of vacations." App. at 172.

■ Even if the exceptions clause is read as applying to both stewards and committeepersons, a matter that was disputed before the Board, the superseniority clause on its face still extends beyond layoff and recall. For example, under the language of the superseniority clause with all of the listed exceptions, a steward apparently could invoke superseniority to resist being downgraded from a GRP to a CSP in the same plant. Numerous decisions of the Board make it clear that this is not a lawful use of superseniority because superseniority cannot lawfully be used to prevent downgrading within the same area of representation. *See, e.g., Mechanics Educ. Soc'y of Am., Local 56 (Revere Copper Prods., Inc.),* 287 N.L.R.B. 935, 936–37 (1987) (superseniority provision overbroad where it protects a steward from any bumping instead of limiting protection to keeping steward in any job on the relevant shift); *International Union of Electronic, Electrical, Technical, Salaried & Machine Workers, Local 663 (Gulton Electro Voice ),* 276 N.L.R.B. 1043, 1044 (1985) (superseniority clause that provides protection from job bumping for chief steward unlawful where steward's responsibilities are

plantwide). Thus, this superseniority clause is presumptively unlawful.

■ Once a presumption of unlawfulness attaches, the union and the employer bear the burden of rebutting that presumption with proof of "legitimate and substantial business justifications." *Milk Drivers*, 531 F.2d at 1166 (quoting *NLRB v. Great Dane Trailers, Inc.*, 388 U.S. 26, 34, 87 S.Ct. 1792, 1797, 18 L.Ed.2d 1027 (1967)). Neither the Union nor the Employer attempted to meet that burden. We will therefore affirm the Board's finding that the superseniority clause is overly broad and enforce its order enjoining the Union and the Employer from maintaining and enforcing the clause except where it can be lawfully applied.[5] *See also Teamsters Local 20 v. NLRB*, 610 F.2d 991, 994–95 (D.C.Cir.1979) (upholding Board determination that "all purposes" superseniority clause is unlawful despite the fact that under the contract its applicability was limited to layoff, recall and route assignments, all of which are lawful under *Dairylea*, because it creates an impression of encouraging union activism).

## C.

### Application of Superseniority Provision

■ The application of the superseniority clause in this situation presents a separate and independent issue from its facial validity. As to the application issue, the Board found that the Union and the Employer unlawfully applied the superseniority clause by transferring a GRP position from Plant 1 to Plant 2 to accommodate Beightol's desire to remain as the union committeeperson in Plant 2 after his recall to the GRP classification. Both the Union and the Employer argue that the transfer of the GRP position was a lawful geographically defensive use of superseniority.

■ The use of superseniority must be analyzed in light of its legitimate rationale. In *D'Amico*, we adopted the Board's position that superseniority provisions for union officers "breach[ ] the neutrality mandated by the [NLRA] by tying the very substantial benefit of job retention to a particular type of membership in good standing—union activism to the extent of seeking to be elected a union officer." 582 F.2d at 823; *see also Dairylea*, 219 N.L.R.B. at 658 (superseniority "ties job rights and benefits to union activities, a dependent relationship essentially at odds with the policy of the Act, which is to insulate one from the other"). We recognized that, nonetheless, "the true rationale for validating a superseniority provision is found in the important function served by the recipient of superseniority in providing continuity of representation in carrying out the objectives of a collective bargaining agreement." 582 F.2d at 825.

In *Dairylea*, the Board explained that a steward superseniority provision limited to layoff and recall was presumptively lawful because "it furthers the effective administration of bargaining agreements on the plant level by encouraging the continued presence of the steward on the job. It thereby not only serves a legitimate statutory purpose but also redounds in its effects to the benefit of all unit employees." 219 N.L.R.B. at 658. In *United Automobile, Aerospace & Agricultural Implement Workers of Am.*, 266 N.L.R.B. 952, 953 n. 9 (1983), the Board extended the presumption of lawfulness to a superseniority clause that entitled grievance handlers to use superseniority to remain on the shift that they represented because it found such a use was akin to layoff protection.[6]

---

5. As to this portion of the Board's order, the Union argues only that the superseniority clause should not be stricken in its entirety, but only insofar as it is unlawful. However it is the Board's position before us that it "did not hold that the entire superseniority clause negotiated by the parties was unlawful." Petitioner's Brief at 15. Thus, the parties are not in disagreement

on this issue, and we need take no position with regard thereto.

6. The issue in *D'Amico, Dairylea* and *United Automobile* concerned the type of union officer entitled to superseniority protection. In this case, the Board found, and the parties do not dispute, that Beightol, as a union committeeperson, was entitled to the protection of the superseniority clause under the .appropriate circum-

Outside the confines of layoff and recall, the Board has narrowly construed the lawfulness of superseniority provisions in light of their inherent negative impact on the other employees in the bargaining unit. Thus, even though the Board stated in *United Automobile* that a clause that entitled grievance handlers to use superseniority to remain on the shift that they represented was "presumptively lawful" because it was akin to layoff protection, 266 N.L.R.B. at 953 n. 9, later decisions have narrowed the potential applicability of that principle. For example, in *Gulton Electro Voice*, the Board held that superseniority could not be invoked by a chief steward with plant-wide duties to prevent job bumping because the steward's duties only required that he remain in the same plant, not that he hold any particular job. 276 N.L.R.B. at 1044.

Similarly, in *Revere Copper*, the Board applied *Gulton Electro Voice* to hold that a superseniority clause that provided that the steward "will not be displaced by a senior employee" could not be used to prevent bumping of a shift steward to a different position on the same shift. 287 N.L.R.B. at 935. As the Board explained, such a superseniority clause is "more than purely defensive" because it "protects a steward against any bumping regardless of whether the protection is necessary to keep the steward on the job in his area of representation." *Id.* at 937. The Board acknowledged that *Dairylea* permits the exercise of superseniority "to protect a steward from layoff from his area of representation," but it clarified that only the "minimal exercise of such protection" is permitted. *Id.* at 936.

Thus, the Board has clearly rejected the position that every use of superseniority to retain a particular job is presumptively lawful. On the other hand, the Board has not taken the position that all superseniority clauses that extend beyond layoff and recall, or all applications of superseniority

clauses beyond layoff and recall, are unlawful. For example, in *Consolidated Freightways*, 302 N.L.R.B. No. 167, 137 L.R.R.M. (BNA) 1204 (May 15, 1991), the Board upheld a superseniority clause that provided that superseniority could be used "in other situations [in addition to layoff and recall] that assure the Steward greater accessibility to co-workers to genuinely assist him to perform his functions as a Steward which will be to the benefit of co-workers." *Id.* at 2, 137 L.R.R.M. at 1204. The Board also held that the clause was lawfully applied to allow a union steward to choose a particular starting time where the time chosen gave the steward greater accessibility to his co-workers.

We agree with the Board's general principle that superseniority can be legitimately used only to the minimum extent necessary for the union representative to carry out his or her representational duties. It follows from this general principle that it is a defensive, and hence acceptable, use of superseniority for a steward threatened with layoff or transfer to displace the employee with the least seniority on the shift where the steward's representational duties relate to that particular shift; it is an overly broad use of superseniority to allow a steward to retain a particular job, not merely any job, on the relevant shift. There have been no court cases addressing this aspect of superseniority clauses, but we conclude that the distinction made by the Board is a legitimate one under the NLRA. The Board's determination in this case that it was an unlawful use of superseniority for the Employer to transfer a GRP position from Plant 1 to Plant 2 in order to allow Beightol to remain in Plant 2 as a GRP with adverse consequences to another employee followed directly from its recognition that Beightol could have remained the union committeeperson by staying in his CSP position in Plant 2.[7]

We recognize that the result of this decision was to require Beightol to make a

---

stances because he was a union agent who needed to be on the job to accomplish duties directly related to the administration of the collective bargaining agreement. *Joy Technologies*, 306 N.L.R.B. No. 1, at 1, 139 L.R.R.M. at 1196.

7. The Employer argues that its actions were not unlawful because it retained managerial discretion to comply with section 82.E by transferring the GRP position from Plant 1 to Plant 2. Employer's Brief at 13–15. However, even if the contract provision gives the Employer the dis-

choice between the higher paying position in Plant 1 to which he was entitled under the contract or retaining his committeeperson status at the lower paying position in Plant 2. The Act does not make such decisions unlawful, and the Board's ruling is not based on an unreasonable construction of the statute. While its decision here may seem highly technical, the Board is entitled to take a prophylactic approach to the use of superseniority clauses. Its decision is consistent with its earlier decisions which narrowly construed the lawfulness of superseniority clauses and limited their application to the minimum necessary to the union official's representative function. Any other exercise of superseniority by a union official gives an impermissible benefit to an employee for his or her union activities.

## III.

## CONCLUSION

For the foregoing reasons, we will enforce the Board's order in its entirety.

cretion to transfer positions under other circumstances, contract language does not exempt the Employer from its obligation to act lawfully under the NLRA. In its decision the Board found that the "Employer transferred the GRP position to plant 2 to ensure that Beightol would remain union committeeman and obtain the higher-paying position." *Joy Technologies*, 306 N.L.R.B. No. 1, at 2, 139 L.R.R.M. at 1197–98. We see no reason to reverse this factual finding of the Board and thus our analysis is properly confined to reviewing the lawfulness of that action.