ELLWOOD CITY POLICE
WAGE AND POLICY
UNIT, Petitioner,

v.

PENNSYLVANIA LABOR
RELATIONS BOARD,
Respondent.

Commonwealth Court of Pennsylvania.

Argued April 12, 1999.
Decided June 9, 1999.
Publication Ordered Sept. 10, 1999.

Gary Lightman, Harrisburg, for petitioner.

Keith Herbster, Harrisburg, for respondent.

Before McGINLEY, J., FLAHERTY, J., and JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge.

The Ellwood City Police Wage and Policy Unit (Unit) petitions for review from the September 15, 1998 order of the Pennsylvania Labor Relations Board (Board) that adopted the hearing examiner's proposed decision and order dismissing the Unit's charges of unfair labor practices against the Borough of Ellwood City (Borough) and rescinding its complaint. We affirm.

The Unit is the authorized bargaining agent for police employees of the Borough. The Unit and the Borough were parties to a collective bargaining agreement (CBA) effective January 1, 1995 through December 31, 1997. The CBA provided that

> [a]n aggrieved member and bargaining unit representative and a reasonable number of witnesses shall be granted reasonable time during working hours to process grievances in accordance with this section without loss of pay or leave time.

(Certified Record "C.R." Unit's Exhibit 1).

On January 28, 1997, Borough Chief of Police Joseph Santillo issued a directive regarding the processing of grievances while on duty. The directive, issued to all police personnel, read as follows:

> You are directed to notify either myself or Lt. Betz prior to processing grievances while on official duty with the Ellwood City Police Department. After notification and approval of the "begin" time for processing a grievance, the date, beginning time and the ending time shall be recorded and submitted to the office of the Chief of Police.
>
> Failure to comply with this directive shall result in disciplinary actions up to and including dismissal.

C.R. Unit's Exhibit 2.

Thereafter, on February 4, 1997, the Unit filed charges of unfair labor practices with the Board, challenging the January 28, 1997 directive as in violation of Sections 6(1)(a) and (e) of the Pennsylvania

Labor Relations Act (PLRA) [1] as read with the Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1–217.10 (Act 111).[2]

Accordingly, hearing examiner Thomas Leonard held a hearing on the Unit's charges at which Officer Scott Stablein and Chief Santillo testified. Officer Stablein testified on behalf of the Unit, stating that the CBA allowed police personnel a reasonable time while on duty to process grievances and that prior to January 28, 1997, personnel did not have to inform Chief Santillo or Lieutenant Betz when working on a grievance. Officer Stablein further testified that employees have continued processing grievances while on duty and that no one has been disciplined for failing to follow the directive.

Chief Santillo testified on behalf of the Borough. In his testimony, Chief Santillo explained that he issued the directive in response to Officer Stablein's conduct. Specifically, Chief Santillo stated that he observed Officer Stablein working on a grievance for 2½ hours during an 8–hour shift. Chief Santillo expressed his concern that police personnel were not on patrol during peak traffic hours, especially when schools let out. Additionally, Chief Santillo testified that he did not intend to prohibit personnel from exercising their rights under the CBA.

On May 18, 1998, the hearing examiner issued a proposed decision and order wherein he dismissed the Unit's charges and rescinded the complaint. In his decision, the hearing examiner concluded that, although on-duty grievance processing was a protected activity under the PLRA, the directive did not ban grievance processing, it did not restrict grievance processing and the Unit failed to establish a *prima facie* case. The hearing examiner further concluded that the directive was a managerial policy not subject to mandatory bargaining. In so concluding, the hearing examiner found that the Borough's interest in public protection and the establishment of reasonable guidelines for grievance processing outweighed the Unit's interest.

The Unit filed timely exceptions to the hearing examiner's proposed decision and order. The Board adopted the proposed decision and order, albeit on other grounds. The Board concluded that on-duty grievance processing was not a protected activity under the PLRA and that therefore, the Unit failed to meet the threshold requirement that the activity in question be a protected activity. Thus, the Board concluded that there was no independent violation of Section 6(1)(a) of the PLRA, 43 P.S. § 211.6(1)(a).

Additionally, the Board concluded that there was no violation of Section 6(1)(e) of the PLRA, 43 P.S. § 211.6(1)(e). Before the Board, the Unit argued that the Borough violated its duty to bargain. The Board determined, however, that the Borough raised an affirmative defense in support of its action, i.e. that Article X of the CBA gave the Borough the right to direct its employees in order to maintain efficiency within the police department so as to ensure public safety.

Accordingly, the Board concluded that the hearing examiner's proposed decision and order was supported by substantial evidence of record and therefore, dis-

---

1. Sections 6(1)(a) and (e) of the Act of June 1, 1937, P.L. 1168, *as amended*, 43 P.S. §§ 211.6(1)(a) and (e).

2. Specifically, Section 1 of Act 111, 43 P.S. § 217.1, provides that

    [p]olicemen or firemen employed by a political subdivision of the Commonwealth or by the Commonwealth shall, through labor organizations or other representatives designated by fifty percent or more of such policemen or firemen, have the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits, and shall have the right to an adjustment or settlement of their grievances or disputes in accordance with the terms of this act.

missed the Unit's exceptions. This petition for review followed.

On appeal, the Unit raises two issues: 1) whether the Board erred as a matter of law in determining that the Borough's restriction regarding on-duty grievance processing did not violate Section 6(1)(a) of the PLRA, 43 P.S. § 211.6(1)(a) and 2), whether the Board erred as a matter of law in determining that the Borough's restriction regarding on-duty grievance processing is not a mandatory subject of bargaining under Act 111 and the PLRA. Our scope of review is limited to determining whether there was a violation of constitutional rights, whether an error of law was committed, or whether the Board's necessary findings are supported by substantial evidence. *Upper St. Clair Police Officers Ass'n v. Pennsylvania Labor Relations Board*, 689 A.2d 362, 365 n. 4 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 549 Pa. 721, 701 A.2d 580 (1997).

The Board concluded that on-duty grievance processing was not a protected activity and that thus, there was no violation of the PLRA. We agree that it is not a protected activity.

Section 6(1)(a) of the PLRA, 43 P.S. § 211.6(1)(a), provides that "[i]t shall be an unfair labor practice for an employer – [t]o interfere with, restrain or coerce employes in the exercise of the rights guaranteed in this act." Employee rights are found in Section 5 of the PLRA, 43 P.S. § 211.5, which provides that

> [e]mployes shall have the right to self-organization, to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection.

The stated purposes of the PLRA are to encourage the practice of collective bargaining and to protect the exercise of freedom of association, self-organization, and designation of representatives, for the purpose of negotiating the terms and conditions of employment. Section 2 of the PLRA, 43 P.S. § 211.2. However, neither the PLRA nor Act 111 was intended to protect every work procedure negotiated that may impact the exercise of those rights.

Collective bargaining agreements create more employee rights than those found in the PLRA. However, disputes arising out of contractually created rights are to be protected by the grievance arbitration process and the Board. To conclude otherwise would potentially allow all contractually created rights, whether they be closely related to union activity or merely a benefit of employment, to come within the ambit of the PLRA.[3]

Moreover, neither the PLRA nor Act 111 gives employees the right to conduct union activity on an employer's time. There is no appellate case law that sanctions union activity conducted on employer's time where the activity interferes with the employer's discharge of its duties. In the case *sub judice*, Chief Santillo issued the directive as a direct result of Officer's Stablein's misuse of rights created by the CBA.

Such rights do not necessarily rise to the level of a protected activity simply because they are contained within the parties' CBA. Thus, we conclude that the Board did not err in determining that on-duty grievance processing is not a protected activity under the PLRA and that accordingly, there was no independent violation of the Section 6(1)(a) of the PLRA, 43 P.S. § 211.6(1)(a).

---

**3.** For example, a collective bargaining agreement may provide that an employer is to supply its employees with new uniforms throughout the work year. Under the Unit's theory, because the collective bargaining agreement addresses uniforms, a dispute over uniforms would be protected under the PLRA, despite the fact that uniforms have no bearing on the right to collectively bargain over wages, hours, and working conditions.

In its second argument, the Unit maintains that the Board erred in concluding that on-duty grievance processing is not a mandatory subject of bargaining under Act 111. A matter is deemed to be subject to mandatory bargaining if it bears a rational relationship to the employees' duties. *City of Bethlehem v. Pennsylvania Labor Relations Board,* 153 Pa.Cmwlth. 544, 621 A.2d 1184 (1993). "However, where a managerial policy concern substantially outweighs any impact the issue will have on employees, the issue will be deemed a managerial prerogative, rendering the issue nonbargainable." *Delaware County Lodge No. 27, Fraternal Order of Police v. Pennsylvania Labor Relations Board,* 722 A.2d 1118, 1121 (Pa. Cmwlth.1998).

As the hearing examiner astutely noted, the issue here is not whether the processing of grievances is subject to mandatory bargaining. Rather, the issue is whether on-duty grievance processing is subject to mandatory bargaining.

Sections B(5) and (8) of Article X of the parties' CBA provides management with the right to direct its employees, to maintain efficiency in the police department and to set standards for the safety of the public and the officers. C.R. Borough's Exhibit 1. The January 28, 1997 directive is consistent with the Borough's attempt to ensure that police personnel are available for public safety. While the Unit has a contractual right to on-duty grievance processing, that right is outweighed by the Borough's duty to ensure public safety. The directive is an attempt both to fulfill the Borough's obligation of providing reasonable time to process grievances and at the same time to inform personnel that "reasonable time" is not unlimited. Thus, we conclude that the Board did not err in failing to conclude that the Borough's managerial concern of public safety substan-

tially outweighs the Unit's interest in on-duty grievance processing.[4]

Accordingly, the order of the Board is affirmed.

### ORDER

AND NOW, this 9th day of June, 1999, the September 15, 1998 order of the Pennsylvania Labor Relations Board is hereby affirmed.

---

4. *See Delaware County Lodge No. 27, Fraternal Order of Police v. Pennsylvania Labor Relations Board,* 722 A.2d 1118 (Pa.Cmwlth.1998) (the Board possesses administrative expertise in the area of public employee labor relations and great deference should be given to its assessment of the competing concerns between the employer and the union).