**PENNSYLVANIA STATE TROOPERS ASSOCIATION, Petitioner,**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 12, 2000.

Decided Nov. 6, 2000.

Sean T. Welby, Harrisburg, for petitioner.

Keith Herbster, Harrisburg, for respondent.

Lisa K. Essman, Harrisburg, for intervenor, Com. of PA.

Before PELLEGRINI, Judge, FRIEDMAN, Judge, and MIRARCHI, Jr., Senior Judge.

FRIEDMAN, Judge.

The Pennsylvania State Troopers Association (PSTA) appeals from a final order of the Pennsylvania Labor Relations Board (PLRB). The PLRB order affirmed a hearing examiner's proposed dismissal of a charge of unfair labor practices filed by PSTA against the Commonwealth of Pennsylvania, Pennsylvania State Police (Commonwealth) for failing to offer Corporal Alexander Roy promotion to sergeant as a helicopter pilot. We also affirm.

During the time pertinent to the charge, the parties were under a collective bargaining agreement (CBA) which recognized the position of helicopter pilot as a specialized position in the Pennsylvania State Police. (Hearing Examiner's Findings of Fact, No. 21.) With respect to vacancies for specialized positions, Article 37 of the CBA states in pertinent part:

Section 1. All vacancies for specialized positions or for specialized training will be posted at appropriate work locations at each station within the troop and at troop headquarters prior to the filling of such vacancies for a period of at least ten (10) calendar days during which time members may express their interest in the position.

*Section 2.* Where it is determined that skill, ability and recent job performance are substantially equal among the bidding members, the vacancy shall be filled, except as provided below, by selecting the member with the greatest seniority.... In evaluating the skill and ability of the bidding members, it is recognized that the appointing officer must exercise particularized judgment with respect to some of the specialized positions. In those cases, that judgment will not be overturned unless it is shown to have been abused or based on unlawful criteria.

*Section 3.* In the event that the specialized position or training is awarded to a member with less seniority than another member or members who had expressed interest in that position or training, the appointing officer shall within ten (10) business days provide a written explanation to each of the more senior members setting forth the reason or reasons for the selection of the less senior member.

(Joint Exhibit 1; Hearing Examiner's Findings of Fact, No. 3.)

Cpl. Roy entered the state police force over ten years ago, and he has been a helicopter pilot in the aviation division of the bureau of emergency and special operations (BESO) since March of 1994. (PLRB's Findings of Fact, No. 5.) In August of 1994, while still on probationary status with BESO, Cpl. Roy was arrested for simple assault, criminal mischief, harassment and disorderly conduct as a result of a physical altercation with one of his wife's co-workers. On March 7, 1995, following an investigation of the incident, Cpl. Roy was given a twenty-day suspension; in addition, he was removed from his probationary status with BESO and returned to his prior troop assignment. Cpl. Roy filed grievances from both the suspension and the removal, and the matters went to arbitration. On January 16, 1996, the arbitrator issued an opinion and award (Zobrak Award) upholding the twenty-day suspension but directing that Cpl. Roy be returned to BESO's aviation division as a helicopter pilot. (Hearing Examiner's Findings of Fact, No. 6.) Cpl. Roy finally was reassigned to pilot status in April of 1998, after he filed two more grievances and one unfair labor practice charge alleging failure to comply with the Zobrak Award.[1] (Hearing Examiner's Findings of Fact, No. 7.) On September 23, 1996, Cpl. Roy was arrested again and charged criminally because of a domestic dispute. As a result, Cpl. Roy received a twenty-five day unpaid suspension. (Hearing Examiner's Findings of Fact, No. 10 .)

In the summer of 1997, PSTA became aware of the Commonwealth's practice of offering certain corporal and sergeant vacancies to selected members who were lower on the promotional eligibility list, while those higher on the list were not offered the same vacancies. (PLRB's Findings of Fact, No. 28.) As a result of PSTA's objection to this practice, on September 10, 1997, the parties entered into a promotional procedures agreement in addition to the CBA already in place. This side letter of agreement (Agreement) was to remain in force for the duration of the then current corporal and sergeant promotional eligibility list. The Agreement states in pertinent part:

1. The Department's practice of offering certain Corporal and Sergeant vacancies to selected members on the promotional eligibility list will be discontinued. If the Department, at its discretion, includes vacancies in the promotion process that are exempt from Article 37 of the [CBA], these vacancies will be offered to all members according to their ranking on the current promotional eligibility list.

---

1. In August of 1996, Cpl. Roy requested a transfer to the aviation division's Latrobe facility. When the request was denied, Cpl. Roy filed a grievance; he was later transferred to the Latrobe facility. (PLRB's Findings of Fact, No. 9.)

2. At the sole discretion of the Commissioner, the Department may promote, in place, any member assigned to a specialized position, as outlined in Article 37 of the [CBA], when that member becomes eligible for promotion.

6. By making this agreement, the Department or the PSTA does not waive any of its rights under the [CBA] with the PSTA or any applicable employment or labor law. All of the provisions of the current [CBA] between the Commonwealth and the PSTA will remain in full force and effect.

(Joint Exhibit 2; Hearing Examiner's Findings of Fact, No. 4.)

Two aviation units, Harrisburg and Hazelton, were supervised by corporals, neither of whom was eligible for promotion. Cpl. Roy, however, was eligible for promotion and, in fact, was at the top of the promotion list; Corporal Foss was second on that list. (Hearing Examiner's Findings of Fact, Nos. 14–15.) On February 17, 1998, Captain James Garofalo, director of the aviation and special services division, called Cpl. Roy and offered him promotion to various sergeant positions. However, Cpl. Roy wanted to stay in the aviation division and, because none of the positions was in aviation, Cpl. Roy declined all offers. Capt. Garofalo then called Cpl. Foss and, in addition to offering him the positions declined by Cpl. Roy, Capt. Garofalo also offered Cpl. Foss a position as sergeant in the aviation division. Cpl. Foss accepted the promotion to sergeant in the aviation unit in Harrisburg. (Hearing Examiner's Findings of Fact, Nos. 16–17, PLRB's Findings of Fact, No. 29.)

On March 17, 1998, PSTA filed charges of unfair labor practices with the PLRB, alleging that the Commonwealth had violated sections 6(1)(a), (c) and (e) of the Pennsylvania Labor Relations Act [2] (PLRA) and Act 111 [3] by declining to promote Cpl. Roy to sergeant as a helicopter pilot. At a hearing on August 26, 1998, PSTA charged that failure to promote Roy was: (1) a failure to implement the terms of the Zobrak Award; (2) a refusal to bargain with PSTA; and (3) in retaliation for Roy's protected activity. In regard to the second of these charges, i.e., the Commonwealth's alleged refusal to bargain in good faith, PSTA contended that the Commonwealth failed to meet its obligation under the parties' Agreement. According to PSTA, there was a vacancy for sergeant within aviation, and, pursuant to the parties' Agreement, the Commonwealth was required to offer that position to the first person on the promotion list, Cpl. Roy. The Commonwealth countered that Cpl. Foss was promoted in place in accordance with the Agreement because promotion in place is at the discretion of the Commissioner,[4] and Cpl. Foss possessed the necessary experience and maturity to be a good supervisor.[5] The parties disagreed as to

2. Act of June 1, 1937, P.L.1168, *as amended,* 43 P.S. §§ 211.6(1)(a), (c) and (e).

3. Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–217.10.

4. Although promotions in place are discretionary under the Agreement, they are discretionary only insofar as they are offered to individuals who qualify on the promotion list. Since 1994, in the aviation division, all promotions to sergeant have been promotions in place. (Hearing Examiner's Findings of Fact, No. 22.).

5. A supervisory sergeant in aviation has responsibilities which demand great independence because aviation units do not have the next level of supervision on site. This is in contrast to non-aviation sergeants positions which may be administrative, may not involve supervision of other troopers, or may have the next level of supervision at the same location. (Hearing Examiner's Findings of Fact, No. 27.) Cpl. Foss had 19 years of service with the state police, eight of those years as midnight corporal at the busiest state police barracks in Pennsylvania. In addition, Cpl. Foss received letters of condemnation and had never been disciplined. (PLRB's Findings of Fact, No. 30.) Capt. Garofalo considered Cpl. Roy's twenty-day suspension and the conduct which resulted in both of Cpl. Roy's suspensions in his decision to recommend promotion for Cpl. Foss over Cpl. Roy. (Hearing Examiner's Findings of Fact, No. 24.)

whether the promotion at issue was a promotional vacancy, offered to all eligible persons on the promotion list, or whether it was a promotion in place, only offered to the person of lower rank who has the necessary expertise. (*See* Hearing Examiner's Findings of Fact, No. 20.) Both parties presented evidence at the hearing and filed post-hearing briefs.· Based on the record, the hearing examiner made findings and, concluding that PSTA failed in its burden of proof, issued a proposed decision and order (PDO) dismissing all three charges of unfair labor practices against the Commonwealth.

PSTA filed timely exceptions to the PDO and, following a review of the matter, the PLRB dismissed the exceptions and made the PDO absolute and final. In doing so, the PLRB considered the hearing examiner's determination that the Commonwealth did not violate the Agreement or the CBA by refusing to offer Cpl. Roy promotion within the aviation division. Addressing PSTA's exception to this determination, the PLRB initially emphasized that, ordinarily, it lacked jurisdiction to decide claims of agreement violation because interpretation of agreements is a matter typically reserved for the grievance arbitration procedure. However, the PLRB noted that a public employer's clear repudiation of a bargained-for agreement constitutes an unfair labor practice as well as a grievance. *See Millcreek Education Association v. Millcreek Township School District*, 22 PPER 22185 (Final Order 1991), *aff'd*, 158 Pa.Cmwlth. 156, 631 A.2d 734 (1993), *appeal denied*, 537 Pa. 626, 641 A.2d 590 (1994). Then, finding that the Commonwealth did not clearly repudiate the Agreement, the PLRB declined to analyze the Agreement's provisions further to

determine which party's interpretation was correct.

■ PSTA now appeals to this court,[6] confining its argument to the issue of whether the Commonwealth violated sections 6(1)(a) and (e) of the·PLRA and Act 111.[7] Specifically, PSTA argues that the PLRB erred in dismissing the unfair labor practices charge, in which PSTA alleged that the Commonwealth violated the Agreement and the CBA regarding promotion procedures, on the basis that the Commonwealth did not clearly repudiate these agreements.

■ This case concerns the proper role for the PLRB in a case dealing with unfair labor practice charges under the PLRA and Act 111. As indicated, the PLRB exists to remedy violations of statute, i.e., unfair labor practices, and not violations of contract. *Parents Union for Public Schools in Philadelphia v. Board of Education of the School District of Philadelphia*, 480 Pa. 194, 389 A.2d 577 (1978). Where breach of contract is alleged, interpretation of collective bargaining agreements typically is for the arbitrator under the grievance procedure set forth in the parties' collective bargaining agreement. *Ellwood City Police Wage and Policy Unit v. Ellwood City Borough*, 29 PPER 29213 (Final Order 1998), *aff'd*, 736 A.2d 707 (Pa.Cmwlth.1999). However, the PLRB will review an agreement to determine whether the employer clearly has repudiated its provisions because such a repudiation may constitute both an unfair labor practice and a grievance. *Millcreek Township; Port Authority of Allegheny County v. Amalgamated Transit Union Local # 85*, 27 PPER 27184 (Final Order 1996).

---

6. Our scope of review from a final order of the PLRB is limited to determining whether there was a violation of constitutional rights, whether an error of law was committed, or whether the PLRB's necessary findings are supported by substantial evidence. *Ellwood City Police Wage and Policy Unit v. Pennsylvania Labor Relations Board*, 736 A.2d 707 (Pa. Cmwlth.1999).

7. PSTA does not appeal those portions of the PLRB order holding that the Commonwealth did not implement the Zobrak Award and that the Commonwealth did not retaliate against Cpl. Roy for his union activity.

Here, the PLRB determined that the Commonwealth's refusal to promote Cpl. Roy to sergeant of an aviation unit was not a clear repudiation of the Agreement or Article 37 of the CBA. To the contrary, the PLRB concluded that the Commonwealth presented a sound arguable basis for its action that did not conflict with either document.[8] Without a clear repudiation, the PLRB held that the Commonwealth's action did not rise to the level of a statutory unfair labor practice but, rather, was a matter of contract interpretation, and, at that point, it fell to a grievance arbitrator to determine which party's interpretation was correct.

■ PSTA disagrees and argues that the PLRB was required to interpret the

Agreement to determine whether the Commonwealth's action amounted to a repudiation of the Agreement and, hence, a failure to bargain in violation of the PLRA. *See* section 6(1)(e) of the PLRA, 43 P.S. § 211.6(1)(e). PSTA also maintains that, because the Agreement here is not subject to grievance arbitration,[9] the PLRB must actually interpret the Agreement in order to apply the defense of "contractual privilege/sound arguable basis" at all. Indeed, PSTA asserts that, where, as here, deferral to arbitration is not proper,[10] the only way the PLRB can fulfill its jurisdictional mandate to identify violations of the PLRA, is to determine which party's interpretation of the Agreement is correct.[11] PSTA argues that the PLRB's refusal to do so requires us to vacate the PLRB's

8. Specifically, the hearing examiner and PLRB determined that, because pilots are specialized positions and under paragraph 2 of the Agreement, the Commissioner has the discretion to promote in place under the procedures outlined in Article 37 of the CBA. Article 37, in turn, allows the appointing officer to choose candidates based on skill, ability and recent job performance. The hearing examiner compared Cpl. Foss's 19 years of experience and letters of commendation to Cpl. Roy's ten years of experience and two recent suspensions, and he determined that the Commonwealth followed the process set forth in the CBA and based its decision on reasonable job related criteria in deciding not to promote Cpl. Roy to sergeant in aviation.

9. We note that the issue of whether the Agreement is subject to grievance arbitration was never decided by the PLRB. The PLRB did recognize that its decisions regarding sound arguable basis often refer to the fact that grievance arbitration is available to resolve contract disputes. However, the PLRB held that these decisions do not preclude it from applying the sound arguable basis concept to situations where the parties failed to subject disputes to the grievance process. Thus, the PLRB concluded that, even if the parties failed to subject the Agreement to the grievance procedures in the CBA, it remained beyond the statutory role of the PLRB to act as a fall back or substitute for that process. *See Upper Makefield Township v. Pennsylvania Labor Relations Board,* 717 A.2d 598 (Pa. Cmwlth.1998), *aff'd,* 562 Pa. 113, 753 A.2d 803 (2000).

10. For the PLRB to invoke deferral: (1) the unfair labor practice must be rooted in the parties' collective bargaining agreement; (2) a grievance must have been filed; and (3) the charge must not allege discrimination or animus toward the exercise of employee rights. *Pine Grove Area School District,* 10 PPER 10167 (Final Order 1979). These standards are not satisfied here because discrimination was alleged and no grievance was filed.

11. PSTA concedes that disputes over the interpretation of agreements entered into under Act 111 are generally left to resolution through the arbitration process, *Pennsylvania State Police v. Pennsylvania State Troopers' Association,* 540 Pa. 66, 656 A.2d 83 (1995); accordingly, PSTA admits that, where it is possible to resolve the issue through arbitration, the PLRB should not become engaged in the interpretation of Act 111 agreements. (PSTA brief at 17.) However, PSTA maintains that this policy should be upheld only where the General Assembly's mandate of arbitration and the PLRB's role in resolving claimed violations of the PLRA both could be satisfied. Thus, if arbitration is not possible, the PLRB must act as interpreter in order to resolve the statutory issue. We disagree. In fact, application of the sound arguable basis analysis allows the PLRB to determine whether the employer fulfilled its collective bargaining obligation under section 6(1)(e) of the PLRA, without taking on the role of an arbitrator.

conclusion that the Commonwealth did not violate the PLRA. We disagree.

■ The PLRB has recognized "contractual privilege" as an affirmative defense to a charge of unfair labor practices alleging a failure to bargain in good faith. The defense calls for the dismissal of such charges where the employer establishes a "sound arguable basis" in the language of the parties' collective bargaining agreement, or other bargained-for agreement, for the claim that the employer's action was permissible under the agreement. *See Ellwood City Borough; Delaware County Lodge # 27 of the Fraternal Order of Police on behalf of the Members of the Police Force of the Borough of Prospect Park v. Prospect Park Borough,* 27 PPER 27222 (Final Order 1996); *Jersey Shore Area Education Association v. Jersey Shore Area School District,* 18 PPER 18117 (Final Order 1987) (quoting *NCR Corp.,* 271 NLRB 1212 (1984) as saying that "where an employer has a sound arguable basis for ascribing a particular meaning to his contract and his action is in accordance with the terms of the contract as he con-

strues it, the NLRB will not enter the dispute to serve the function of arbitrator in determining which party's interpretation is correct.")

In this case, the hearing examiner and the PLRB concluded that the Commonwealth had a sound arguable basis for its interpretation of the Agreement and, thus, dismissed the unfair labor charges without determining if the Commonwealth's interpretation actually was correct. PSTA contends that this was error and, relying on *Indiana Borough v. Pennsylvania Labor Relations Board,* 695 A.2d 470 (Pa. Cmwlth.1997), PSTA asserts that this court "has *firmly rejected* the application of the contractual privilege defense in cases arising out of Act 111 and Sections 6(1)(e) of the PLRA." (PSTA's brief at 15–16, emphasis added.) However, PSTA's reliance on *Indiana Borough* is misplaced. Indeed, in *Indiana Borough,* we do not reject the concept of contractual privilege but, rather, recognize it as an affirmative defense. We merely decline to apply it under the circumstances in that case without supporting legal authority.[12]

---

12. In *Indiana Borough,* the Borough appealed from a decision of the PLRB finding that the Borough committed unfair labor practices by unilaterally changing the scheduling system utilized for its police department. The Borough raised the defense of contractual privilege, arguing that it could not be found guilty of unfair labor practices because it was acting under the reasonable belief that it had the right to take such action under the terms of the parties' collective bargaining agreement. In response to this argument, we stated:

> Finally, the Borough asserts that it cannot be found guilty of [an unfair labor practice] because it was acting under the reasonable belief that it had the right to unilaterally change the shift scheduling system under the terms of the CBA, citing our decision in Upper Saucon [v. Pennsylvania Labor Relations Board, 152 Pa.Cmwlth. 530, 620 A.2d 71 (1993.) ] While the public employer in Upper Saucon raised a similar defense, we declined to address it because by not raising it as an exception to the hearing examiner's order, the employer had waived it. *In addressing the waiver issue, although we stated that "[c]ontractual privilege is a separate affirmative defense," we did not in any way explain the mechanics for determining*

*the validity of such a defense nor did we cite any authority therefor. 620 A.2d at 73. Here, the Borough cites no other authority from this or any other court of the Commonwealth that explains or validates the "contractual privilege" defense and we have been unable to locate any after our own independent research; as such, the Borough's argument must fail.*
Indiana Borough, 695 A.2d at 476 (emphasis added). Based on this language PSTA now claims that this court *soundly rejected* the validity of the contractual privilege defense generally. We cannot agree.

In *Indiana Borough,* there was no dispute that the Borough implemented a change in the officers' duty schedules without negotiating the change with the officers' union. Thus, in *Indiana Borough* and *Upper Saucon,* the issue was whether the Borough was obligated *to negotiate the schedule change* as a mandatory subject of bargaining under the PLRA and Act 111. This is an issue which should be determined in the first instance by the PLRB. *Upper Saucon.* In the present case, however, once the PLRB determined that the Commonwealth did not violate the PLRA or Act 111 by clearly repudiating previously bar-

■ Here, we are satisfied that the Commonwealth did not clearly repudiate the Agreement or the CBA by failing to offer Cpl. Roy promotion to sergeant in the aviation division, but, in fact, presented a sound arguable basis for its action. As a result, PSTA failed to establish that the Commonwealth's action rose to the level of a statutory unfair labor practice. Accordingly, because the PLRB's dismissal of the charges against the Commonwealth was not error, we affirm.

### ORDER

AND NOW, this 6th day of November, 2000, the order of the Pennsylvania Labor Relations Board, dated October 19, 1999, is hereby affirmed.

gained-for provisions, the issue boils down to contract, not statutory, violation. As stated, matters of contract interpretation are for the arbitrator.