# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Berks-Lehigh Regional Police Officers Association | : | |
| | : | |
| | : | |
| v. | : | No. 786 C.D. 2016 |
| | : | Argued: December 15, 2016 |
| Upper Macungie Township, Topton Borough, Lyons Borough and Maxatawny Township | : | |
| | : | |
| | : | |
| | : | |
| Petition of: Upper Macungie Township | : | |
| | : | |

**BEFORE:** HONORABLE P. KEVIN BROBSON, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE DAN PELLEGRINI, Senior Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                              **FILED:  January 12, 2017**


Petitioner Upper Macungie Township (Township) appeals from an order of the Court of Common Pleas of Berks County (trial court), denying the Township's motion for summary judgment.  For the reasons that follow, we affirm.

The undisputed facts are as follows.  On January 1, 1991, Maxatawny Township, Topton Borough, and Lyons Borough (collectively, "Participants") established the Northeastern Berks Regional Police Commission (the Commission) for the stated purpose of increasing the quality and efficiency of police protection for the Participants.  The effect of the Commission was to establish a unified policing district, the Northeastern Berks Regional Police District, which allowed

the Participants' formerly separate police departments to operate across any of the Participants' municipal boundaries.

On December 26, 2000, the Participants agreed to amend the Commission's charter to include the Township as an additional participant and to rename the Commission the Berks-Lehigh Regional Police Commission.[1] On December 3, 2007, the Commission entered into a collective bargaining agreement (CBA) with the Berks-Lehigh Regional Police Officers Association (the Association), a duly recognized bargaining unit for fulltime police officers in the Berks-Lehigh Regional Police Department (the Department).[2] The CBA covered the years 2008, 2009, and 2010. On January 24, 2011, the Commission and the Association participated in an interest arbitration pursuant to what is commonly referred to as the Policemen and Firemen Collective Bargaining Act or Act 111, Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1-.10. As a result of the January 24, 2011 arbitration, the arbitrators issued an award, providing that the Commission and the Association shall enter into a new agreement, which shall be effective retroactively from January 1, 2011, until December 31, 2013.

On March 19, 2012, the Commission held an executive session at which the Township moved to withdraw from the Commission effective at the end of 2012.[3] On April 17, 2012, the Commission voted to close the Department

---

[1] From this point forward in the opinion, the term Participants shall include Upper Macungie Township.

[2] The Department is operated by the Commission.

[3] In its brief, the Township notes that it voted to withdraw from the Commission at a regular public meeting of the Township's Supervisors, held on November 3, 2011. (Township Br. at 5 n.1.)

2

effective December 31, 2012. As of December 31, 2012, the Commission disbanded the Department and terminated the employment of all Department police officers.

On May 16, 2012, the Association filed a charge with the Pennsylvania Labor Relations Board (PLRB) pursuant to Act 111 and the Pennsylvania Labor Relations Act (PLRA),[4] alleging that the Commission engaged in unfair labor practices by failing to engage in collective bargaining or interest arbitration over the impact of the Township's withdrawal from the Commission and the subsequent closure of the Department. By decision dated June 7, 2012, the PLRB declined to issue a complaint and dismissed the charge of unfair labor practices after determining that the charge was filed prematurely.

On May 20, 2013, the Association and the Commission participated in an arbitration before a panel of three arbitrators to determine the impact of the Commission's decision to disband the Department.[5] On April 26, 2014, the panel issued an award titled "Act 111 Impact Arbitration Award" (the Award). (Reproduced Record (R.R.) at 89a.) The Award purported to be pursuant to Section 4(b) of Act 111, 43 P.S. § 217.4(b). The panel framed the issue before it as "what is the impact of the Commission's decision to no longer provide police services by disbanding its police department . . . how the impact of that decision shall be addressed and what remedies, if any shall be provided." (R.R. at 89a-90a.)

---

[4] Act of June 1, 1937, P.L. 1168, *as amended*, 43 P.S. §§ 211.1-.13.

[5] At oral argument, counsel for both parties stated that, to the best of their knowledge, the Association and the Commission mutually agreed to proceed to arbitration on the impact of the Commission's decision.

3

The Award addressed numerous issues relating to the dissolution of the Department, including: (1) reference letter to be given to officers employed as of the date of dissolution, (2) ongoing maintenance of personnel files, (3) cooperation on ongoing arrests and active criminal cases, and (4) recall of officers in the event that the Department is re-established on or before December 31, 2014. Notably, the Award provided that "[a]ll other proposals of the parties regarding the impact of the Commission's decision to disband its police department which are not addressed in this Award have been fully considered by the Panel and rejected by a majority of the same." (R.R. at 92a.) The Award also provided that "[t]he Panel shall retain jurisdiction for ninety (90) days from the date of this Award for the limited purpose of addressing any issues involving the implementation of the terms of the within Award." (*Id.*)

On November 7, 2014, the Association filed a complaint in the trial court against the Participants, alleging that the CBA was a valid contract between the Participants and the Association and that the Participants breached that contract by disbanding the Department prior to the expiration of the CBA on December 31, 2013. On December 15, 2015, the Township filed a motion for summary judgment in the trial court, arguing that the Association raised the breach of contract claim in the Association's complaint before the May 23, 2013 arbitration panel and that the Association's complaint should be dismissed because the Award resolved all of the claims therein. The trial court denied the Township's motion for summary judgment without opinion on March 16, 2016.

On April 12, 2016, the Township petitioned the trial court to amend its March 16, 2016 order to include the interlocutory appeal language prescribed by 42 Pa. C.S. § 702(b). By order dated April 14, 2016, the trial court denied the

4

Township's request to include the interlocutory appeal language. On May 16, 2016, the Township petitioned this Court for review of the trial court's denial of the Township's request to include the interlocutory appeal language.[6] On June 14, 2016, we granted the Township's petition for review to consider whether the trial court lacked jurisdiction over this matter because the matter was either controlled by arbitration or was within the exclusive jurisdiction of the PLRB.[7]

The Township argues that the trial court lacks jurisdiction over the instant matter because the Award is final and binding and settled all issues raised in the Association's complaint. Alternatively, the Township argues that, even if the Award did not settle all issues raised in the Association's complaint, the Association's claim that the Township breached the CBA effectively alleges that the Township engaged in unfair labor practices, which the PLRB has exclusive jurisdiction over pursuant to Section 8 of the PLRA, 43 P.S. § 211.8.[8] The

---

[6] The Township's petition to this Court for review of an interlocutory order was made pursuant to the official note to Pa. R.A.P. 1311, which provides that:

> Where the administrative agency or lower court refuses to amend its order to include the prescribed statement, a petition for review under Chapter 15 of the unappealable order of denial is the proper mode of determining whether the case is so egregious as to justify prerogative appellate correction of the exercise of discretion by the lower tribunal. If the petition for review is granted in such a case, the effect . . . is the same as if a petition for permission to appeal had been filed and granted, and no separate petition for permission to appeal need be filed.

[7] Because the issue for which we granted review is a question of law, our standard of review is *de novo* and our scope of review is plenary. *Cmwlth. v. White*, 910 A.2d 648, 650 n.3 (Pa. 2006); *Pa. Waste Indus. Ass'n v. Monroe Cnty. Mun. Waste Mgmt. Auth.*, 80 A.3d 546, 555 (Pa. Cmwlth. 2013) (*en banc*).

[8] Section 8 of the PLRA provides:

> The [PLRB] is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice listed in section six of this act. This

**(Footnote continued on next page…)**

5

Association argues that the Award was an impact arbitration award, rather than a grievance arbitration award, which neither settled nor purported to settle the Association's breach of contract claim. Further, the Association argues that the breach of contract claim does not necessarily allege an unfair labor practice, and, therefore, the trial court has original jurisdiction to decide the claim.

We first address whether the Award finally settled the breach of contract claim raised in the Association's complaint. In doing so, we must examine whether the arbitration was an interest arbitration or a grievance arbitration within the definitions set forth in the PLRA.

The Township argues that the Association's claim involving a breach of the CBA is a grievance, which was settled via a final and binding grievance arbitration rather than an interest arbitration. The Association argues that the Award was an interest arbitration award, which did not settle the breach of contract claim for several reasons: (1) the Award itself stated that it was only an interest award; (2) the CBA did not provide a specific procedure for resolving grievances and, thus, did not provide that the parties should arbitrate any grievances which arose; and (3) the Award did not address the Association's breach of contract claim, let alone render a final and binding decision on that claim.

Our Supreme Court has previously elucidated the distinction between an interest and a grievance arbitration:

---

**(continued…)**

> power shall be exclusive and shall not be affected by any other means of adjustment or prevention that have been or may be established by agreement, law or otherwise.

6

> "Interest arbitration" is to be distinguished from "grievance arbitration." "Interest arbitration" is the arbitration that occurs when the employer and employees are unable to agree on the terms of a collective bargaining agreement. "Grievance arbitration" is the arbitration that occurs when the parties disagree as to the interpretation of an existing collective bargaining agreement.

*City of Philadelphia v. Int'l Ass'n of Firefighters, Local 22*, 999 A.2d 555, 558 n.2 (Pa. 2010).

While we agree that an award is not necessarily an interest arbitration award simply because "interest arbitration" is written in the header of the document, the substance of the Award also supports a conclusion that the Award is an interest award and not a grievance award. We first note that the "issues in dispute" submitted by the Association prior to the Arbitration did not mention the breach of contract claim, but related only to the potential impacts of the dissolution on matters such as salary, rank, and benefits of officers. (R.R. at 210a.) Further, the relief granted by the Award relates only to issues that may arise between the Association and the Participants after the dissolution, rather than whether the Participants breached the CBA. Specifically, the Award provides: (1) that officers employed as of the date of dissolution shall be given neutral letters of reference noting that their employment was terminated due to the dissolution; (2) that personnel files for formerly employed officers will be maintained by Maxatawny Township; (3) that formerly employed officers will cooperate with ongoing criminal trials and previously made arrests; and (4) that any former officer who remained employed through December 31, 2012, shall have the right to be recalled if the Department is re-established on or before December 31, 2014. Thus, the relief addressed in the Award relates only to how the Commission and the

7

Association will interact after the dissolution, rather than deciding any outstanding grievances.

In arguing that the Award also addressed the Association's breach of contract claim, the Township places great weight on section 5 of the Award, which is titled "Remaining Issues." (R.R. at 92a.) Section 5, however, merely states that "[a]ll other proposals of the parties *regarding the impact of the Commission's decision to disband its police department* which are not addressed in the Award have been fully considered by the Panel and rejected by a majority of the same." *Id.* (emphasis added). Even if the parties did present arguments on the Association's breach of contract claim, the Award is specifically limited to addressing the impact of the Commission's decision rather than any breach or violation of the CBA.

Further, the CBA itself does not call for final and binding arbitration in the event a grievance arises. The only reference to a grievance procedure relates to discipline of officers: "[a]ny Police Officer discipline imposed by the Commission shall be subject to such rules as General Orders, Standard Operating Procedures and Policies promulgated by the Commission and/or the Chief of Police." (R.R. at 70a.) Our Supreme Court has previously held that Act 111 does not require that grievances and disputes be resolved by binding arbitration. *See Twp. of Moon v. Police Officers of Twp. of Moon*, 498 A.2d 1305 (Pa. 1985). In the absence of such an agreement to arbitrate, "the Court of Common Pleas has jurisdiction over actions involving claims under collective bargaining agreements." *Borough of Philipsburg v. Bloom*, 554 A.2d 166, 168 (Pa. Cmwlth. 1989), *aff'd,* 574 A.2d 602 (Pa. 1990). Despite Act 111's intent to encourage resolution of CBA grievances through arbitration, the parties are free to exclude grievances

8

from the dispute resolution process. *West Lampeter Twp. v. Police Officers of W. Lampeter Twp.*, 598 A.2d 1049, 1051 (Pa. Cmwlth. 1991), *appeal denied*, 613 A.2d 562 (Pa. 1992). It is axiomatic that arbitration is a matter of contract and that a particular issue cannot be arbitrated absent an agreement between the parties. *Hazleton Area Sch. Dist. v. Bosak*, 671 A.2d 277, 281 (Pa. Cmwlth. 1996).

Having determined that the Award was not final and binding with respect to the Association's breach of contract claim, we now address whether the trial court or the PLRB has jurisdiction to decide that issue.

The Pennsylvania Constitution sets forth the starting point for determining what tribunal has jurisdiction over a particular type of claim. Article 5, Section 5 of the Pennsylvania Constitution provides "[t]here shall be one court of common pleas for each judicial district . . . having unlimited original jurisdiction in all cases except as may otherwise be provided by law." *See Cnty. of Erie v. Verizon North, Inc.*, 879 A.2d 357, 363 (Pa. Cmwlth. 2005); 42 Pa. C.S. § 931(a).[9] Thus, the next step in our analysis is determining whether any law vests jurisdiction in another court or agency. Section 8 of the PLRA empowers the PLRB "to prevent any person from engaging in any unfair labor practice listed in section six of this act." We have previously held that the PLRA, read in *pari*

---

[9] 42 Pa. C.S. § 931(a) provides:

**(a) General rule -** Except where exclusive original jurisdiction of an action or proceeding is by statute or by general rule adopted pursuant to section 503 (relating to reassignment of matters) vested in another court of this Commonwealth, the courts of common pleas shall have unlimited original jurisdiction of all actions and proceedings, including all actions and proceedings heretofore cognizable by law or usage in the courts of common pleas.

9

*materia* with Act 111, vests in the PLRB the authority to adjudicate claims involving unfair labor practices which arise in relation to a collective bargaining agreement. *Wilkes-Barre Twp. v. Pa. Labor Relations Bd.*, 878 A.2d 977, 982 (Pa. Cmwlth. 2005).

While it is clear the Association's claim relates to an alleged breach of the CBA, it does not expressly allege that the Commission engaged in unfair labor practices.[10] The Township argues that a breach of a CBA is an unfair labor practice as a matter of law, or, alternatively, that the PLRB must determine if an unfair labor practice exists before jurisdiction reverts to the trial court.

We do not agree with the Township's contention that every breach of contract claim relating to a CBA is an unfair labor practice as a matter of law. We have previously held that such a breach could result in both an unfair labor practice and a grievance:

> Where breach of contract is alleged, interpretation of collective bargaining agreements typically is for the arbitrator under the grievance procedure set forth in the parties' collective bargaining agreement. However, the PLRB will review an agreement to determine whether the employer clearly has repudiated its provisions because *such a repudiation may constitute both an unfair labor practice and a grievance.*

*Pa. State Troopers Ass'n v. Pa. Labor Relations Bd.*, 761 A.2d 645, 649 (Pa. Cmwlth. 2000) (emphasis added) (internal citations omitted). Thus, if a party submits a claim to the PLRB alleging an unfair labor practice due to a breach of

---

[10] We recognize that the Association had previously filed a charge of unfair labor practices with the PLRB on May 16, 2012. The PLRB, however, dismissed the charge as premature, and, presumably, the Association chose not to pursue that charge after the dismissal.

contract, the PLRA empowers the PLRB to review the CBA to determine if the breach rises to the level of an unfair labor practice.[11] Accordingly, every breach of contract claim is not necessarily an unfair labor practice.[12]

Additionally, the PLRA does not require that a party must first submit a breach of contract claim to the PLRB to determine whether it does, in fact, constitute an unfair labor practice. "The PLRB exists to remedy violations of statute, *i.e.*, unfair labor practices, and not violations of contract." *AFSCME, Dist. Council 47, Local 2187 v. Pa. Labor Relations Bd.*, 41 A.3d 213, 217 (Pa. Cmwlth. 2012). We have held that the PLRB will review a repudiated contract to determine if unfair labor practices exist, but we did not hold that it must do so. *See Pa. State Troopers Ass'n*, 761 A.2d at 649. Here, the Association chose not to pursue an unfair labor practice claim after the PLRB determined that the charge

---

[11] Section 8(b) of the PLRA provides that "[w]henever *it is charged* that any person has engaged in or is engaging in any such unfair labor practice, the [PLRB], . . . shall have authority to issue charges in that respect." The Association did not attempt to charge in its complaint that an unfair labor practice occurred, and, thus, the PLRB has no authority to issue charges on a claim that was not raised.

[12] The Township cites *Wilkes-Barre Township* for the proposition that a breach or repudiation of a collective bargaining agreement must also be an unfair labor practice. *Wilkes-Barre Township,* however, is readily distinguishable from the instant case. In *Wilkes-Barre Township*, the township allegedly repudiated a collective bargaining agreement with the local police association by enacting an ordinance providing different compensation for new hires than the compensation agreed to in the collective bargaining agreement. *Willkes-Barre Twp.*, 878 A.2d at 979. The PLRB held that the township committed an unfair labor practice in violation of Act 111 by unilaterally altering the collective bargaining agreement. Although factually similar in some respects, *Wilkes-Barre Township* is procedurally distinct on one critical point: the association in *Wilkes-Barre Township* filed a claim alleging unfair labor practices with the PLRB rather than filing a complaint in a court of common pleas. Thus, *Wilkes-Barre Township* has no bearing on whether any breach of contract arising out of a CBA constitutes an unfair labor practice that must first be submitted to the PLRB.

11

was filed prematurely on June 7, 2012. The Association's complaint provides, in pertinent part:

> 24. [The Association] believes and therefore states, that it had a valid contract in existence that did not expire until the end of 2013.
>
> 25. [The Association] further believes, and therefore states, that accordingly, the Defendants have an obligation to fund the CBA at least through the end of 2013.
>
> 26. The Defendants are in breach of their contract with [the Association].
>
> 27. As a direct and proximate result of the breach by the Defendants, [the Association] has suffered a loss in excess of Fifty Thousand Dollars ($50,000).

(R.R. 6a.) As stated above, not every breach of contract claim related to a CBA is an unfair labor practice as a matter of law. Thus, the Association has alleged only a breach of contract claim and has sought only relief in the form of compensatory damages consistent with a breach of contract claim. Accordingly, the trial court has original jurisdiction over the Association's breach of contract claim. In contrast, had the Association alleged an unfair labor practice or sought relief consistent with the PLRA, the PLRB would have exclusive jurisdiction over that claim. *Pa. State Lodge of the Fraternal Order of Police v. Pa. State Police*, 535 A.2d 270, 271 (Pa. Cmwlth. 1987).

Contrary to the Township's assertions, we find no case law to support a conclusion that all breach of contract claims relating to a CBA are *per se* unfair labor practices within the exclusive jurisdiction of the PLRB. In fact, our prior decisions support a determination that a breach of contract claim which does not allege unfair labor practices should be adjudicated using the grievance process set forth in the CBA. In the absence of such a grievance process, the courts of

12

common pleas have original jurisdiction over a breach of contract claim. Thus, the Association's complaint was properly before the trial court.

Accordingly, the order of the trial court is affirmed.

_____
P. KEVIN BROBSON, Judge

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Berks-Lehigh Regional Police Officers Association | : | |
| | : | |
| | : | |
| v. | : | No. 786 C.D. 2016 |
| | : | |
| Upper Macungie Township, Topton Borough, Lyons Borough and Maxatawny Township | : | |
| | : | |
| | : | |
| | : | |
| Petition of: Upper Macungie Township | : | |
| | : | |

## **O R D E R**

AND NOW, this 12th day of January, 2017, the order of the Court of Common Pleas of Berks County, denying Upper Macungie Township's motion for summary judgment, is hereby AFFIRMED.

_____
P. KEVIN BROBSON, Judge