Pennsylvania Labor Relations Board *v.* General Braddock Area School District, Appellant.

Argued November 2, 1977, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Rogers and Blatt.

*Emil E. Narick*, with him *Anderson, Moreland & Bush*, for appellant.

*Raymond W. Cromer* and *Ronald N. Watzman*, with them *Watzman, DeAngelis & Elovitz; James L. Crawford;* and *Forest N. Myers*, for appellees.

Opinion by Judge Wilkinson, Jr., December 16, 1977:

This is an appeal from an order of the Allegheny County Court of Common Pleas dismissing an appeal

from a final order of the Pennsylvania Labor Relations Board (PLRB), appellee, which found that appellant had committed unfair labor practices in violation of Section 1201(a)(1), (3), and (5) of the Public Employe Relations Act (Act), Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §1101.1201(a)(1), (3), and (5). We affirm.

The facts will require recitation at some length. Appellant was created by the merger of three adjacent school districts in 1971. In April 1973, pursuant to a joint request for certification by appellant and the General Braddock Area Schools Service Personnel Association/PSEA (Association), the PLRB certified the Association as the exclusive representative of a bargaining unit comprised of approximately 20 service personnel in specified occupational classifications. Negotiations between appellant and the Association on their first collective bargaining agreement began in September 1973. Substantial progress toward an agreement was made until late November 1973, after which an election of a new Board of School Directors (Board) was held. This election was followed by the dissolution of a Board of Control which had taken charge of appellant's operations since the district had been declared a financially distressed district shortly after its formation.

When negotiations resumed in January 1974, appellant's negotiating team, which included the new Board members, announced to the Association that negotiations were to start again from the beginning. One of the new Board members asked that each employee in the bargaining unit declare before the officers of the Board whether or not he or she wanted to be represented by the Association, and the same member wanted certain employees in the bargaining unit declared "confidential employees" and thus excluded

from the unit. The Board insisted on these points and, despite the efforts of a mediator, the Association went on strike from March 4, 1974 until April 16, 1974. During that period the Board filed a decertification petition which was withdrawn and followed by a unit clarification petition with the PLRB, which found that all members of the bargaining unit were to be included within it except one who was stipulated to be a "confidential employee." The strike ended with an agreement to submit the entire dispute to binding arbitration, pursuant to Section 804 of the Act, 43 P.S. §1101.-804. All negotiations were to cease until the arbitrator reached his decision.

In June 1974, before the arbitrator had ruled, appellant followed its apparent practice of prior years and notified its approximately 150 federally-funded employees that they would be terminated pending re-application and re-hiring decisions. This group included 8 full-time employees who were among the 19 members of the bargaining unit in question. Appellant declined to negotiate with the bargaining unit concerning the action, claiming that it was done for budgetary reasons within appellant's managerial prerogatives. The Association alleged that the action against the eight was motivated by anti-union sentiments and filed unfair labor practice charges with the PLRB on August 2, 1974.

On August 19, 1974, the arbitrator issued his award of a collective bargaining agreement, to be retroactive to July 1, 1973 and effective through June 30, 1975. This was followed by the re-hiring, in early September 1974, of six of the eight members of the bargaining unit who had been terminated. The six, who had refused to cross picket lines during the strike, were given reduced hours and rates of pay. The other two members, who had crossed picket lines, continued in full-

time employment although neither was the most senior employee among the eight and, in fact, one of the two was the least senior.

Hearing on the charges of unfair labor practices was held on October 10, 1974. Also on that day, the Association filed additional charges of unfair labor practices, alleging that appellant unilaterally decided to establish hourly rates of pay and refused to abide by the provisions of the agreement. The Association also filed a group grievance under the agreement, alleging that appellant's actions constituted a violation thereof. Appellant denied the charges and further requested that they be dismissed on the ground that the matter was governed by the agreement. The matter went to grievance arbitration and hearings before an arbitrator were held in November 1974. Despite appellant's requests that the proceedings on the unfair labor practice charges be stayed pending the outcome of the grievance proceedings, hearings on the charges were held before a PLRB trial examiner in November and December 1974.

Although the arbitrator found evidence of "some adverse feeling toward the Association," he found that appellant had not violated the law prior to the date of the issuance of the collective bargaining agreement (August 16, 1974) and that the Association would have to accept all non-economic matters (expressly including job classifications and part-time employees) as they stood on that date. The PLRB, however, found, *inter alia*, that the six employees who refused to cross the picket lines had been reduced in hours and rates of pay; that the two who did cross were continued in full-time employment although they did not have seniority; that appellant had a budget surplus of approximately $300,000 at the time of the personnel changes; that appellant had refused to abide by the

agreement as to the payment of salaries to members of the bargaining unit; and that one of the Board members had indeed demanded that each member declare before the Board whether he or she wished to be represented by the Association. The PLRB ruled, therefore, that, while appellant had not violated clauses (2) and (4) of Section 1201(a), 43 P.S. §1101.1201(a)(2) and (4), it had violated clauses (1), (3), and (5) of Section 1201(a). This appeal followed the dismissal by the common pleas court of appellant's appeal from the PLRB's final order.

Appellant's initial argument is that a violation of the Act cannot be predicated on findings as to its conduct occurring more than four months prior to the filing of charges of unfair labor practices. The basis of the argument is Section 1505 of the Act, 43 P.S. §1101.1505, which states, in pertinent part, that "[n]o petition or charge shall be entertained which relates to acts which occurred or statements which were made more than four months prior to the filing of the petition or charge." In *Pennsylvania Labor Relations Board v. Rizzo,* 21 Pa. Commonwealth Ct. 216, 344 A.2d 744 (1975), we addressed a similar argument. There, through Judge MENCER, we noted the striking similarity between Section 1505 of the Act and Section 10(b) of the National Labor Relations Act, 29 U.S.C. §160.(b). While acknowledging that federal decisions as to labor relations in the private sector are not controlling in the interpretation of the Act, we held that the United States Supreme Court case of *Machinists Local 1424 v. NLRB,* 362 U.S. 411 (1960), provides "an excellent analogy" to the interpretation of Section 1505 of the Act. *Rizzo, supra,* at 221, 344 A.2d at 747. We, therefore, adopted as applicable to Section 1505 the construction given to the federal statute by

the Supreme Court, which, speaking through Mr. Justice HARLAN, ruled:

> It is doubtless true that §10(b) does not prevent all use of evidence relating to events transpiring more than six months before the filing and service of an unfair labor practice charge. However, in applying rules of evidence as to the admissibility of past events, due regard for the purposes of §10(b) requires that two different kinds of situations be distinguished. The first is one where occurrences within the six-month limitations period in and of themselves may constitute, as a substantive matter, unfair labor practices. There, earlier events may be utilized to shed light on the true character of matters occurring within the limitations period; and for that purpose §10(b) ordinarily does not bar such evidentiary use of anterior events. The second situation is that where conduct occurring within the limitations period can be charged to be an unfair labor practice only through reliance on an earlier unfair labor practice. There the use of the earlier unfair labor practice is not merely 'evidentiary,' since it does not simply lay bare a putative current unfair labor practice. Rather, it serves to cloak with illegality that which was otherwise lawful. And where a complaint based upon that earlier event is time-barred, to permit the event itself to be so used in effect results in reviving a legally defunct unfair labor practice.

*Machinists Local, supra,* at 416-417, quoted in *Rizzo, supra,* at 221-22, 344 A.2d at 747. (Footnote omitted.) In *Rizzo, supra,* the PLRB found no unfair labor practices had occurred within the four-month limitations

period. Here, in contrast, the PLRB found that appellant had terminated members of the bargaining unit only two months prior to the filing of charges in August 1974, and that those terminations, though purportedly for economic reasons, took place at a time when appellant's budget showed a surplus of approximately $300,000. In addition, the PLRB found that appellant had refused to abide by the provisions of the agreement within four months of the filing of charges in October 1974. The court below, therefore, committed no error in upholding the action of the PLRB in examining earlier events to "shed light on the true character of matters occurring within the limitations period. . . ." *Machinists Local, supra.*

While we note appellant's insistence, set forth at length in its brief, that the actions it took concerning the eight members of the bargaining unit were not illegally motivated, we cannot agree that the record fails to supply substantial evidence for the PLRB's findings and support its conclusions that unfair labor practices occurred. We reject appellant's reliance on *Pennsylvania Labor Relations Board v. Mars Area School District,* 21 Pa. Commonwealth Ct. 230, 344 A.2d 284 (1975), to support its contention that the actions were within appellant's managerial prerogatives and responsibilities and thus beyond the scope of unfair labor practice sanctions and grievance arbitration procedures. The situation in *Mars Area, supra,* where we expressly noted that there was no doubt that the job program in question was eliminated for economic reasons and that such job program was not the only program cut back, is far different from the instant case.

Appellant contends, nonetheless, that the common pleas court erred in upholding the PLRB's failure to stay its proceedings on the charges of unfair labor

practices pending the outcome of the grievance arbitration. As observed by Justice POMEROY, speaking for our Supreme Court in *Hollinger v. Department of Public Welfare*, 469 Pa. 358, 366, 365 A.2d 1245, 1249 (1976), where a party seeks redress of an alleged unfair labor practice, "jurisdiction to determine whether an unfair labor practice has occurred and, if so, to prevent a party from continuing the practice is in the PLRB, and nowhere else." We cannot, therefore, conclude that the PLRB is powerless to investigate charges of unfair labor practices merely because a collective bargaining agreement exists under which grievance arbitration is available for the determination of issues similar to those upon which the charges are based. Nor, on the facts here, can we find error in the common pleas court's affirmance of the PLRB's refusal to defer to arbitration.

We can find no merit in appellant's other claims.

Accordingly, we will enter the following.

ORDER

Now, December 16, 1977, the order of the Allegheny County Court of Common Pleas, No. S.A. of 1975, Civil Division, dated December 29, 1975, is hereby affirmed.