631 A.2d 734

**MILLCREEK TOWNSHIP SCHOOL DISTRICT, Appellant,**

**v.**

**PENNSYLVANIA LABOR RELATIONS BOARD and Millcreek Township Education Association.**

Commonwealth Court of Pennsylvania.

Argued March 1, 1993.

Decided Aug. 24, 1993.

Mark T. Wassell, for appellant.

John J. Barber and Timothy Tietze, for appellee.

Before PELLEGRINI and FRIEDMAN, Judges, and NARICK, Senior Judge.

FRIEDMAN, Judge.

Millcreek Township School District (District) appeals an order of the Court of Common Pleas of Erie County which affirmed an order of the Pennsylvania Labor Relations Board (PLRB or Board). We affirm.

This case arises over a supplemental coaching contract between the District and Peter Flinn,[1] which gave Flinn the position of head basketball coach for the District's high school varsity basketball team. In recognition of Flinn's foregoing his seniority rights at the school where he had been employed, the District offered him a three-year supplemental contract and also agreed to give him one-year notice if it decided not to renew this contract at the end of the third season. Thus, the District effectively granted Flinn a four-year coaching contract.

The Millcreek Township Education Association (Association) filed an unfair labor practices charge with the PLRB claiming that the District's offer of a multi-year supplemental coaching contract to Flinn was in contravention of its collective bargaining agreement with the Association. The PLRB agreed, determining that the District's action constituted an unfair labor practice because it was "a repudiation of the clear terms

1. Flinn was also offered a teaching contract, which is not at issue here.

of the collective bargaining agreement"[2] contrary to section 1201(a)(1) and (5) of the Pennsylvania Employee Relations Act (Act), Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. § 1101.1201.[3]

On appeal[4] to this court, the District contends that it did not commit an unfair labor practice because it had no duty to bargain over the length and renewal provisions of Flinn's supplemental contract. In support of this contention, the District argues: (1) that it could waive its right to limit supplemental contracts to one year and to renew or cancel those contracts at the end of the athletic season; (2) that the Association waived its right to require bargaining over the maximum length of the supplemental contract by agreeing to a minimum one-year term for such contracts; and (3) that the PLRB lacked jurisdiction to determine whether the collective bargaining agreement had been violated.

In substance, the District is asserting that the collective bargaining agreement sets a minimum, not a maximum, length for supplemental contracts and that the District is not required to bargain over its decision to give Flinn a longer,

2. Final Order of the PLRB, Case No. PERA–C–90–340–W, September 3, 1991.

3. The Act provides, in pertinent part:
   (a) Public employers, their agents or representatives are prohibited from:
   (1) Interfering, restraining or coercing employes in the exercise of the rights guaranteed in Article IV of this act. [footnote omitted.]
   . . . .
   (5) Refusing to bargain collectively in good faith with an employe representative which is the exclusive representative of employes in an appropriate unit, including but not limited to the discussing of grievances with the exclusive representative.
   Article IV of the Act, section 401, 43 P.S. § 1101.401, provides that public employes have the right to engage in collective bargaining.

4. Our scope of review is limited to determining whether the Board's findings are supported by substantial evidence and whether its conclusions based upon those findings are reasonable, not arbitrary, capricious or illegal. *St. Joseph's Hospital v. Pennsylvania Labor Relations Board,* 473 Pa. 101, 373 A.2d 1069 (1977). We defer to the Board's expertise and will not lightly substitute our judgment for that of the Board. *Appeal of Cumberland Valley School District,* 483 Pa. 134, 394 A.2d 946 (1978).

more secure supplemental contract than required by the Agreement. The Association, on the other hand, argues that the Agreement provides for *annual* renewal or cancellation of supplemental contracts. By giving Flinn a more secure contract, the Association contends, the District repudiated the collective bargaining agreement and committed an unfair labor practice.

The collective bargaining agreement provides in pertinent part:

Within ten (10) weeks after the last athletic event, supplement contracts for coaches will either be officially reoffered to those holding them or will be officially opened to new applicants.

(R.R. at 6a.) In addition, testimony also establishes that prior to Flinn's contract, school board policy and practice had been to grant supplemental coaching contracts for a one-year period. (R.R. at 33a.) The renewal provision quoted above was added to the Agreement so that coaches would be timely notified whether their supplemental contracts were to be renewed or cancelled prior to the beginning of the new school year. (R.R. at 34a.)

The PLRB [5] concluded that both past practice and the quoted portion of the collective bargaining agreement dictate that supplemental contracts be awarded and renewed annually and that the supplemental contract awarded to Flinn contravened this requirement. In reaching this conclusion, the Board cogently analyzed and rejected the District's argument that the collective bargaining agreement set only a minimum contract length which the District could increase if it wished and that the District was not required to bargain over the term of the initial supplemental contract with a newly hired teacher:

[T]he District argues that the right to hire and fire athletic coaches has historically been recognized by the parties as a

5. The Hearing Examiner issued a Proposed Decision and Order on July 11, 1991 which contained findings of fact, a detailed discussion, conclusions and an order directing remedial action. The Board issued a shorter Final Order on September 3, 1991 which made the Proposed Decision and Order "absolute and final."

management prerogative and is evidenced by past practice and collective bargaining provisions. In this regard, the District argues that it is nonsensical to acknowledge the District's right to enter into four separate one-year agreements with Mr. Flinn, while simultaneously maintaining that there is no such right to enter into one four-year agreement. The District asserts that the agreement with Mr. Flinn simply represents a "waiver" of the District's own right to terminate the coach during the four-year period. As reflected in the agreement between Mr. Flinn and the District, however, Mr. Flinn's purpose in securing a four-year contract was to avoid the annual review which is directly addressed in the parties' collective bargaining agreement. The four-year agreement represents job security, and such security is not approximated by the annual review process. Whatever the rights the District has with respect to terminating athletic coaches is fettered by the constraints of the bargained agreement. The security gained by Mr. Flinn through the four-year agreement is not available to other bargaining unit members and the agreement is flatly inconsistent with the collective bargaining agreement and the District's own policy.

The District further asserts that the District's agreement with Mr. Flinn is consistent with the practice whereby the District negotiates individually with teachers who are newly hired. The District argues that the Association's acquiescence in this practice must result in a finding that the practice is binding upon the Association in the circumstances presented here. The record does reveal that, within certain constraints, the Association has permitted individual negotiations regarding the initial step teachers are to be placed upon hire. However, this agreement is expressly stated in the collective bargaining agreement. In the present case, the District is operating in a fashion which is inconsistent with the status quo as defined in the collective bargaining agreement and District policy.

Proposed Decision and Order, July 11, 1991, at 5–6 (PDO).

In response to the District's second argument, that the Association waived its right to require bargaining over the

maximum length of the supplemental contract, the PLRB found that the collective bargaining agreement established *only* annual supplemental contracts and that Flinn's multi-year contract violated this Agreement. Thus, there can be no cognizable claim that the Association waived its right to bargain [6] over the length of supplemental contracts. However, even assuming a different interpretation of the supplemental contract provision, the "zipper" or "waiver" clause of the Agreement does not permit unilateral alteration of the status quo without bargaining.[7] *Commonwealth v. Pennsylvania Labor Relations Board*, 74 Pa.Commonwealth Ct. 1, 459 A.2d 452 (1983). The record here supports the PLRB's determination that pursuant to the status quo supplemental coaching contracts were to be awarded and renewed on an annual basis. The District could not unilaterally change this status quo.

■ The District also argues that the Board lacks jurisdiction over this matter because its conclusion rests on an interpretation of the collective bargaining agreement. This argument misconstrues the function of the PLRB which has exclusive jurisdiction to prevent unfair labor practices. Section 1301 of the Act, 43 P.S. § 1101.1301. The fact that the same act may give rise to both a violation of the collective bargaining agreement and an unfair labor practice, or that determination of whether an unfair labor practice has occurred may depend on interpretation of the collective bargaining agreement, does not oust the Board of jurisdiction. *Penn-*

6. Section 701 of the Act, 43 P.S. § 1101.701 provides that a public employer has an obligation to bargain in good faith over wages, hours, terms and conditions of employment.

7. A "zipper" or "waiver" clause is commonly incorporated in the collective bargaining agreement to prevent incessant demands by a party seeking to alter the status quo. *Commonwealth v. Pennsylvania Labor Relations Board*, 74 Pa.Commonwealth Ct. 1, 459 A.2d 452 (1983). Here, the "zipper" clause stated:

   The parties agree that all negotiable items have been discussed during the negotiations leading to this Contract and that no additional negotiations on this Contract will be conducted on any item, whether contained herein or not, except by mutual consent.

   (Original Record, Contract Between the Board of Directors Millcreek Township School District and the Millcreek Education Association, Article I.E.1.b, August 26, 1988–August 25, 1993.)

*sylvania Labor Relations Board v. General Braddock Area School District*, 33 Pa.Commonwealth Ct. 55, 380 A.2d 946 (1977); *Commonwealth v. Pennsylvania Labor Relations Board.*

This brings us back to the critical question addressed by the PLRB: Was the District's action, granting Flinn a supplemental coaching contract which did not conform to either past practice or the collective bargaining agreement, an unfair labor practice?

Case law establishes that an employer's unilateral change in the terms and conditions of employment, a mandatory subject of bargaining, is considered a refusal to bargain in good faith and is an unfair labor practice in violation of section 1201 of the Act, 43 P.S. § 1101.1201.[8] The contract at issue here granted a future employee of the school district a greater benefit, in the form of a longer, more secure supplemental contract, than had previously been granted and than would, presumably, have been available to members of the bargaining unit. We have found no Pennsylvania court decisions specifically addressing this situation. However, the PLRB has addressed both the unilateral grant, as opposed to reduction, of benefits and the issue of whether a contract with a future employee is governed by the collective bargaining agreement and has concluded that the grant of special benefits to an incoming teacher constitutes an unfair labor practice.[9]

**8.** *See, e.g., Pennsylvania Labor Relations Board v. General Braddock Area School District*, 33 Pa.Commonwealth Ct. 55, 380 A.2d 946 (1977) (unilateral reduction in hours and rates of pay of several employees); *Commonwealth v. Pennsylvania Labor Relations Board*, 74 Pa.Commonwealth Ct. 1, 459 A.2d 452 (1983) (imposition of smoking ban); *Appeal of Cumberland Valley School District*, 483 Pa. 134, 394 A.2d 946 (1978) (refusal to continue payment of various insurance premiums and reimbursements after expiration of contract).

**9.** In *Jefferson–Morgan School District*, 9 PPER ¶ 9056, the PLRB held that a school district was not free to unilaterally offer a higher salary to a prospective employee than that negotiated for other bargaining unit employees. In that case, as here, the school district had argued that it should be free to bargain directly because the teacher was not yet a member of the bargaining unit and because of a past practice of negotiating with newly hired teachers. There, the PLRB rejected the school district's argument regarding prospective hires because "a bar-

The rationale for considering the unilateral grant of benefits to be an unfair labor practice is that, even if unintentional, the role of the collective bargaining agent as the sole representative of all employees would be undermined if the school district could unilaterally bargain to give individual employees greater benefits than those negotiated for employees who bargained collectively.[10] The issue is not whether the change is a benefit or a detriment to the employees, but whether it affects a mandatory subject of bargaining, i.e. wages, hours or other terms or conditions of employment. A unilateral change in a mandatory subject of bargaining constitutes a refusal to bargain in good faith and is an unfair labor practice because it undermines the collective bargaining process which is favored in this Commonwealth. *Appeal of Cumberland Valley School*

gaining representative is the agent not just of those persons who happen to be filling particular employe positions but is the representative for all employe positions which comprise the unit." *Id.*, quoting *Warwick Area Board of School Directors*, 3 PPER 15 (1973). Likewise, the PLRB rejected the argument that a past practice of negotiating salary with incoming teachers allowed the school district to totally disregard the collective bargaining agreement in setting the salary for a newly hired teacher. The PLRB noted that, although there may have been individual negotiation in the past, "incoming teachers were hired in a manner consistent with the operation of the salary schedule." *Id.* Other PLRB decisions confirm that the PLRB considers any unilateral change by the school district, even one which creates a benefit for one individual teacher, to be an unfair labor practice. *Highland Sewer and Water Authority*, 4 PPER 116 (1974) (unilateral wage increase to one employee during contract negotiations in order to retain a valued employee was an unfair labor practice because it violated the obligation to bargain in good faith); *General Braddock Area School District*, 4 PPER 86 (1974) (unilateral wage increase to basketball coaches is an unfair labor practice). We perceive no sound distinction between the unilateral grant of a better wage and the unilateral grant of an increased contract term.

10. In *General Braddock Area School District*, where the PLRB refers to this rationale, it cites to two National Labor Relations Board cases, *National Business Forms*, 176 NLRB 859 and *Fitzgerald Mills Corporation*, 133 NLRB 877. In *Appeal of Cumberland Valley School District*, 483 Pa. 134, 394 A.2d 946 (1978), our supreme court stated that it is appropriate to look to federal decisions for guidance where the provisions of the National Labor Relations Act and of the PERA are substantially similar and noted that both Acts favor collective bargaining and impose a duty to bargain in good faith.

*District,* 483 Pa. 134, 394 A.2d 946 (1978); Sections 101 and 701 of the Act, 43 P.S. §§ 1101.101 and 1101.701.

While the decisions of the PLRB are not binding on this court, we find the PLRB reasoning to be persuasive and to be consistent with court cases on unilateral changes in employment terms. We are also mindful of our scope of review and the deference which we must show to the PLRB's expertise in determining unfair labor practices. In this case, the Board's conclusions are reasonable, not arbitrary or capricious and accordingly we hold that any unilateral change in a mandatory subject of bargaining, whether a benefit or a detriment to the employee, is an unfair labor practice.

Accordingly, we affirm.

## ORDER

AND NOW, this 24th day of August, 1993, the order of the Court of Common Pleas of Erie County, is affirmed.