**MUNICIPAL EMPLOYEES ORGANIZATION OF PENN HILLS**

v.

**MUNICIPALITY OF PENN HILLS, Appellant.**

**Municipal Employees Organization of Penn Hills**

v.

**Municipality of Penn Hills and Pennsylvania Labor Relations Board:**

**Appeal of Pennsylvania Labor Relations Board.**

Commonwealth Court of Pennsylvania.

Argued May 3, 2005.

Decided June 9, 2005.

---

John F. Cambest, Pittsburgh, for appellant, Municipality of Penn Hills.

Robert L. McTiernan, Pittsburgh, for appellee, Municipal Employees Organization of Penn Hills.

Warren R. Mowery, Jr., Harrisburg, for appellee, Pennsylvania Labor Relations Board.

BEFORE: SMITH–RIBNER, J., and FRIEDMAN, J., and FLAHERTY, Senior Judge.

OPINION BY Judge FRIEDMAN.

The Pennsylvania Labor Relations Board (PLRB) and the Municipality of Penn Hills (Employer) (together, Appellants) appeal from the May 26, 2004, order of the Court of Common Pleas of Allegheny County (trial court), which "reversed and vacated" the PLRB's order. In its order, the PLRB determined that Employer had not committed an unfair practice within the meaning of sections 1201(a)(1)

and (5) of the Public Employe Relations Act[1] (Act). We reverse.

The Municipal Employees Organization of Penn Hills (Union)[2] and Employer were parties to a collective bargaining agreement (CBA) during the term from January 1, 2001, to December 31, 2003. (Hearing Examiner's (H.E.) Findings of Fact, No. 3.) The CBA allows a covered employee or the Union to grieve discipline that allegedly is imposed "without just cause." (CBA, Art. 9, § 3; R.R. at 74a.) The CBA sets forth a four-step grievance procedure, with the final step being submission of the grievance to arbitration. (H.E.'s Findings of Fact, No. 3.)

On September 27, 2002, Employer discharged John Rogan (Rogan), alleging chronic and excessive absenteeism. (H.E.'s Findings of Fact, No. 5; Stipulation of Fact, ¶ 6; R.R. at 22a–23a.) On September 30, 2002, the Union filed a verbal grievance with Employer, followed by a formal written grievance on October 4, 2002, asserting that Rogan's discharge was without just cause "under the Agreement." (H.E.'s Findings of Fact, Nos. 6, 8; Stipulation of Facts, ¶ 11; R.R. at 23a.) Employer refused to process the grievance, contending that, pursuant to an "Alternative Discipline Agreement," commonly referred to as a "last chance agreement" (LCA), Rogan and the Union had waived the right to file a grievance or to proceed to arbitration.[3] (H.E.'s Findings of Fact, Nos. 7, 9.)

1. Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.1201(a)(1) and (5). Section 1201(a) of the Act provides, in relevant part:

> Public employers, their agents or representatives are prohibited from:
> (1) Interfering, restraining or coercing employes in the exercise of the rights guaranteed in Article IV [relating to employe rights] of this act.
> . . .
> (5) Refusing to bargain collectively in good faith with an employe representative which is the exclusive representative of employes in an appropriate unit, including but not limited to the discussing of grievances with the exclusive representative.

43 P.S. § 1101.1201(a)(1) and (5).

2. The Union is the certified representative of a bargaining unit of employees in Employer's water pollution control division, and John Rogan (Rogan) is a member of that unit. (Findings of Fact, Nos. 2, 4.)

3. On January 9, 1998, in lieu of Rogan's immediate discharge for willful misconduct, Rogan, Employer and the Union entered into a LCA. The LCA provides, in pertinent part:

> 3. The Employer will not terminate [Rogan] but will permit his return to work on February 28, 1998 subject to the terms and conditions in this agreement.
> . . .

6. Upon returning to work, [Rogan] and the Union understand and agree that [Rogan] shall be immediately discharged from employment with no recourse for appeal, hearing, trial or arbitration under the labor agreement, Federal or State Court Systems if he violates any of the following regulations or conditions. [Rogan] and Union also agree and waive any pre-discipline hearing. Violations of ... conditions set forth below shall constitute willful misconduct and be sufficient grounds for termination:

. . .

  f. chronic or excessive absenteeism. The determination of what is "chronic or excessive" shall be at the sole discretion of the Employer.

. . .

7. By signature of this Agreement, [Rogan] and the Union acknowledge that they have read and understand all the terms and conditions of this entire agreement. They specifically understand the immediate discharge provision set forth in paragraph 6, and further understand that the Union and [Rogan] release and waive the Union's and/or [Rogan's] right to challenge the penalty of discharge or the underlying facts for the imposition of the penalty by filing a court action or grievance pursuant to the collective bargaining agreement. [Rogan] and Union understand that they waive any pre-disciplinary hearing.

As a result, the Union filed a charge of unfair practices with the PLRB, alleging that Employer violated sections 1201(a)(1), (5) and (8) of the Act by refusing to process the grievance.[4] On March 3, 2003, the PLRB's Secretary issued a complaint against Employer. (H.E.'s proposed decision and order at 1; R.R. at 11a.) Employer responded by filing an answer and new matter, in which Employer admitted that it refused to arbitrate Rogan's grievance, but denied that it committed any unfair practices. Additionally, Employer raised the affirmative defense of Release pursuant to the LCA. (R.R. at 14a–15a.) The parties waived their rights to a hearing and, instead, submitted a joint stipulation of facts and exhibits to the hearing examiner. Based upon the record, the hearing examiner concluded that Employer violated sections 1201(a)(1) and (5) of the Act by refusing to process the grievance.[5] Employer filed timely exceptions with the PLRB.

After reviewing the record, the PLRB concluded that Employer had not committed an unfair practice within the meaning of section 1201(a)(1) or (5) of the Act. In doing so, the PLRB concluded that, under the express language of the LCA, the Union and Rogan "had clearly and unequivocally waived" the right to challenge Rogan's dismissal. (PLRB's Final Order at 4.) The PLRB noted that Employer satisfied its bargaining obligations with respect to Rogan's termination in 1998 by reaching a settlement, i.e., the LCA, under which Employer agreed not to terminate Rogan in exchange for the Union and Rogan's agreement to waive Rogan's future grievance and arbitration rights. The PLRB concluded that Employer's adherence to the terms of the LCA did not violate the Act, and, therefore, the PLRB sustained Employer's exceptions and vacated the hearing examiner's finding of unfair practices.

The Union filed an appeal with the trial court, which "reversed and vacated" the PLRB's order and directed Employer and the Union to arbitrate Rogan's grievance. In its decision, the trial court relied upon the rule that arbitrators, not courts, decide arbitrability in the first instance and that public policy favors arbitration. The trial court found it significant that: (1) the parties entered into the LCA in 1998, before the current CBA was negotiated; and (2) the LCA provided no protection to the employee where no independent third party could challenge the grounds for any action Employer might take against Rogan.[6]

---

(LCA ¶¶ 3, 6–7.)

4. The charge alleged, "[Employer] refuses to arbitrate [Union's] grievance concerning the discharge of a bargaining unit member." (R.R. at 5a.) The charge was subsequently amended to state, "Commencing October 25, 2002 and thereafter, [Employer] through its Manager and Assistant Manager has refused to arbitrate [Union's] grievance concerning the discharge of a bargaining unit member." (R.R. at 10a.)

5. The hearing examiner dismissed the charge under section 1201(a)(8) because the record did not indicate that Employer refused to comply with a binding grievance arbitration. No exceptions were filed to that dismissal;

therefore, the charge under section 1201(a)(8) is no longer at issue.

6. In discussing Rogan's apparent lack of protection, the trial court stated:

since [Employer] asserts no one can question their facts, Mr. Rogan (the employee) is completely without protection. If he merely displeases a superior by wearing a uniform, with a frayed sleeve, or returning late from a coffee break, or no reason at all he can be discharged with no independent third party deciding the propriety of such discharge.... [Employer] and the PLRB believe that ... Rogan ... has given up all rights under the contract and could be fired for no reason at all at the whim of the

Appellants filed separate appeals to this court, which were consolidated by order dated June 25, 2004.[7] Before this court, Appellants argue that the trial court erred in finding that Employer committed unfair practices. According to Appellants, the trial court improperly substituted its judgment for that of the PLRB and ignored facts of record. Appellants contend that the PLRB's decision is supported by substantial evidence because the record discloses that: (1) under the LCA, Rogan waived his right to avail himself of the CBA's grievance and arbitration procedure; (2) Rogan's chronic and excessive absence from work violated the LCA and triggered his discharge; and (3) under the LCA, the determination of what constitutes "chronic or excessive" absenteeism shall be at Employer's sole discretion. On the other hand, the Union argues it and Rogan did not waive their right to have an arbitrator decide the initial issue of whether Rogan violated Employer's rules. Consequently, the Union maintains that, notwithstanding the LCA, this matter must be submitted, in the first instance, to an arbitrator, and Employer's refusal to do so constitutes an unfair practice.

In *Hollinger v. Department of Public Welfare,* 469 Pa. 358, 365 A.2d 1245 (1976), our supreme court stated:

The starting point in a consideration of whether the PLRB has [the exclusive power to determine the merits of a controversy] ... between public employes and their employer (or between such employes and their collective bargaining representative) must be to ascertain whether the remedy sought is redress of an unfair labor practice. If it is, then the [PLRB] is vested with exclusive original jurisdiction by Section 1301 of the ... Act [8]. ...

*Id.* at 365, 365 A.2d at 1248–49 (footnote omitted). Moreover, although section 1301 directly addresses the PLRB's power to *prevent* an unfair practice, that section also implicitly empowers the PLRB to *determine* the occurrence of an unfair practice. *Id.* Thus, "jurisdiction to determine whether an unfair labor practice has indeed occurred ... is in the PLRB, and nowhere else." *Id.* Simply because "the same act may give rise to both a violation of the collective bargaining agreement and an unfair labor practice, or that determination of whether an unfair labor practice has occurred may depend on interpretation

[E]mployer, even for a torn uniform. This is the clear import of their conduct, since they argue no independent third party can even look at the basis of any action they took or may take against Mr. Rogan.
(Trial ct. op. at 3–5.)

7. This court's jurisdiction is pursuant to section 762(a)(3) of the Judicial Code, 42 Pa.C.S. § 762(a)(3) (relating to secondary review of appeals from Commonwealth agencies which may initially be taken to the trial court under section 933(a)(1)(vii) of the Judicial Code, 42 Pa.C.S. § 933(a)(1)(vii) (relating to appeals from certain determinations of the PLRB under the Act)). Accordingly, our scope of review is limited to determining whether the PLRB's findings are supported by substantial evidence and whether its conclusions based

upon those findings are reasonable, not arbitrary, capricious or illegal. *Millcreek Township School District v. Pennsylvania Labor Relations Board,* 158 Pa.Cmwlth. 156, 631 A.2d 734 (1993), *appeal denied,* 537 Pa. 626, 641 A.2d 590 (1994). We defer to the PLRB's expertise and will not lightly substitute our judgment for that of the PLRB. *Id.*

8. Section 1301 of the Act provides:
   The [PLRB] is empowered, as hereinafter provided, to prevent any person from engaging in any unfair practice listed in Article XII of this act. This power shall be exclusive and shall not be affected by any other means of adjustment or prevention that have been or may be established by agreement, law, or otherwise.
   43   P.S. § 1101.1301.

of the collective bargaining agreement, does not oust the [PLRB] of jurisdiction." *Millcreek Township School District v. Pennsylvania Labor Relations Board,* 158 Pa.Cmwlth. 156, 631 A.2d 734, 737 (1993), *appeal denied,* 537 Pa. 626, 641 A.2d 590 (1994);[9] *see also Hotel & Restaurant Employees International Union Local No. 391–AFL–CIO v. School District Allentown City,* 702 A.2d 16 (Pa.Cmwlth.1997). Because the Union is seeking redress of allegedly unfair practices, the PLRB has exclusive jurisdiction to determine whether unfair practices have occurred. Section 1301 of the Act, 43 P.S. § 1101.1301; *Hollinger; Millcreek Township; see also Hotel & Restaurant Employees* (relying on *Hollinger* and stating that redress of conduct which even arguably constitutes an enumerated unfair practice is to be sought before the PLRB). Exercising that jurisdiction, the PLRB concluded, based on the language of the LCA, that Employer's actions did not constitute an unfair practice. We hold that the PLRB did not err in so concluding.

■ Here, Rogan is covered by the CBA, and his discharge is a topic covered by the CBA. Thus, arbitration is mandatory, section 903 of the Act, 43 P.S. § 1101.903, unless Employer can establish that the Union and Rogan expressly waived their right to arbitration under the circumstances here.[10] *See United Steelworkers of America, AFL–CIO–CLC v.*

*Lukens Steel Company, Division of Lukens, Inc.,* 969 F.2d 1468 (3d Cir.1992) (holding that where there is a presumption that a matter must be submitted to arbitration, to overcome that presumption, the employer must establish that an agreement expressly excludes the dispute from arbitration or that there is "strong and forceful" evidence of an intention to exclude the dispute from arbitration); *Avery v. Pennsylvania Labor Relations Board,* 97 Pa.Cmwlth. 160, 509 A.2d 888 (1986) (stating that the intent of the parties to a contract is determined only from the express language of the agreement).

■ Paragraph 6(f) of the LCA provides that chronic and excessive absenteeism shall constitute willful misconduct and be sufficient grounds for termination and, importantly, that the *"determination* of what is 'chronic or excessive' shall be at the *sole discretion* of the Employer." (LCA, ¶ 6(f); R.R. at 116a) (emphasis added). Additionally, paragraph 7 of the LCA provides that "the Union and [Rogan] release and waive the Union's and/or [Rogan's] right to challenge the penalty of discharge *or* the *underlying facts* for the imposition of the penalty by filing a court action or grievance pursuant to the collective bargaining agreement." (LCA, ¶ 7; R.R. at 116a) (emphases added). Thus, the LCA expressly provides that Employer determines the threshold question of whether Rogan violated the LCA and that such

---

9. In *Millcreek Township,* the union filed an unfair practice charge with the PLRB claiming that the school district's offer of a multiyear supplemental coaching contract to the high school basketball coach contravened the union's CBA with the District. The District argued that the PLRB lacked jurisdiction because its conclusions rested on an interpretation of the CBA. We disagreed, relying on section 1301 of the Act.

10. An employee may resolve his dispute with an employer by way of a settlement agreement, such as the LCA here. *See* Section 101 of the Act, 43 P.S. § 1101.101 (stating that the purpose of the Act is to promote orderly and constructive relationships between all public employers and their employees); *Avery v. Pennsylvania Labor Relations Board,* 97 Pa. Cmwlth. 160, 509 A.2d 888 (1986) (relying on 43 P.S. § 1101.101). Moreover, an employee or union may waive statutory rights under the Act. *Chambliss v. City of Philadelphia,* 17 Pa. Pub. Empl. R. 17018 (1985).

determination cannot be challenged by filing a grievance.[11] Accordingly, pursuant to paragraphs 6(f) and 7 of the LCA, the Union and Rogan expressly waived their right to arbitrate the penalty imposed as well as the threshold question of whether Rogan's actions constituted chronic and excessive absenteeism, a violation of the LCA. Consequently, the PLRB properly concluded that Employer's refusal to process Rogan's grievance based on the LCA was not an unfair practice, and the trial court erred in "reversing and vacating" the PLRB's decision and order.[12]

Accordingly, we reverse.

## ORDER

AND NOW, this 9th day of June, 2005, the order of the Court of Common Pleas of Allegheny County, dated May 26, 2004, is hereby reversed.

11. Compare *Lukens* where the third circuit ruled that the grievances of three employees had to be submitted to arbitration under the terms of a CBA because the LCAs did not address who would decide the threshold question of whether the employees violated the LCAs.

12. In arriving at this conclusion, we are mindful that we must review the PLRB's decision and show deference to the PLRB's expertise in determining unfair practices. *Millcreek Township*. In this case, the PLRB's findings are supported by substantial evidence and its conclusions, based on the language in the LCA, are reasonable and not arbitrary or capricious. In this regard, we believe the trial court improperly engaged in fact-finding in that some of the hypothetical scenarios posited by the trial court clearly have no basis in the record. Indeed, the LCA sets forth fourteen specific conditions which would constitute willful misconduct and serve as the basis for Rogan's termination, and a "frayed sleeve" or "no reason at all" are not among them. Although the trial court was merely positing hypotheticals and did not state that Rogan was discharged for those reasons, those hypotheticals clearly were part of the reasoning leading to the trial court's conclusion.