**AFSCME, DISTRICT COUNCIL 47, LOCAL 2187, Petitioner**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 20, 2012.

Decided March 22, 2012.

Ralph J. Teti, Philadelphia, for petitioner.

John B. Neurohr and Warren R. Mowery, Jr., Harrisburg, for respondent.

Elise Bruhl, Deputy City Solicitor, Philadelphia, for intervenor City of Philadelphia.

BEFORE: LEADBETTER, Judge, and LEAVITT, Judge, and COLINS, Senior Judge.

OPINION BY Senior Judge COLINS.

Petitioner American Federation of State, County, and Municipal Employees, District Council 47, Local 2187 (AFSCME), petitions for review of the May 17, 2011 Final Order of Respondent Pennsylvania Labor Relations Board (Board), in which the Board determined that Intervenor City of Philadelphia Streets Department (City) did not commit unfair labor practices when it laid off Marguerite Morgan instead of Rosemary Ray. On appeal, AFSCME claims (1) that the Board erred as a matter of law by failing to utilize super seniority as required by the Collective Bargaining Agreement (CBA) between the City and AFSCME, and (2) that substantial evidence does not support the Board's finding that Morgan's layoff was not the result of anti-union animus. For the reasons discussed below, we affirm the Board.

The facts found by the Board's Hearing Examiner are summarized as follows. In June 2009, the City initiated a series of layoffs due to lack of funds. (Preliminary Decision and Order (PDO), Findings of Fact (F.F.) ¶ 4, Reproduced Record (R.R.) at 47a.) The Streets Department Commissioner, Clarena Tolson, determined several classes of employees in the Streets Department were to be laid off. (*Id.*) In the Streets Department's Administrative Section, Tolson included in the layoff, among other classes, the class of Departmental Accounting System Specialist.

(*Id.*) At the time, there were only two employees in the Administrative Section who held that position: Marguerite Morgan and Rosemary Ray. (F.F. ¶ 5, R.R. at 48a.)

Morgan was the AFSCME Executive Board Liaison for both the Streets Department and the Municipal Services Building. (F.F. ¶¶ 3, 5, R.R. at 47a–48a.) Morgan was also the union's chief steward for the Streets Department, the department in which she worked, and she supervised all other chief stewards. (*Id.*) Ray was a shop steward, but in another department. (*Id.*)

Under Section 17(C) of the CBA, union stewards and elected officials are to receive super seniority credit in the event of layoffs, meaning that they have greater protection against being laid off than employees who are not shop stewards or elected officials. (F.F. ¶ 6, R.R. at 48a.) The parties had never before encountered the situation here, where two union stewards, and only two union stewards, held a position subject to layoffs. (PDO at 3, R.R. at 49a.) Given this "unusual scenario," the City decided that neither Ray nor Morgan could be afforded super seniority credit. (F.F. ¶¶ 7, 10, R.R. at 48a; Sept. 10, 2010 Hearing Transcript (Sept. 2010 H.T.) at 200, R.R. at 291a.) According to the City, Section 17(C) applied to both of them, and neither could have one more layoff point than the other. (*Id.*)

Because super seniority produced a tie, the City resorted to the layoff point score and tie-breaking procedures set forth in the City of Philadelphia Civil Service Regulations and the City of Philadelphia Office of Human Resources Layoff Policies and Procedures. (F.F. ¶¶ 8–10, R.R. at 48a.) Applying those procedures, the City calculated that Ray had a higher total layoff point score than Morgan, and higher component scores for performance and seniority. (F.F. ¶ 11, R.R. at 48a.) As a result, Ray retained her position as Departmental Accounting System Specialist, and Morgan was laid off.[1] (*Id.*)

Following Morgan's layoff, AFSCME filed charges of unfair labor practice on October 5, 2009, and amended them on November 2, 2009, alleging violations of the Pennsylvania Public Employee Relations Act (PERA), Sections 1201(a)(1), (3), and (5).[2] AFSCME claimed that the City had violated its bargaining obligation under Section 1201(a)(5) of PERA by denying Morgan super seniority, and that the City, in violation of Section 1201(a)(3), discriminatorily laid off Morgan because she was a union steward and spent considerable amount of time representing union members, filing grievances, and otherwise carrying out functions under the CBA. The City responded that it had simply followed its existing procedures for layoffs and, in doing so, the process resulted in Morgan being selected for layoff.

---

1. Morgan exercised her "bumping" rights under the CBA and accepted a lower classified position with the City.

2. Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–1101.2301. The pertinent subparts of Section 1101.1201(a) provide that public employers are prohibited from: "(1) Interfering, restraining or coercing employes in the exercise of the rights guaranteed in Article IV of this act; ... (3) Discriminating in regard to hire or tenure of employment or any term or condition of employment to en-

courage or discourage membership in any employe organization; ... [or] (5) Refusing to bargain collectively in good faith with an employe representative which is the exclusive representative of employes in an appropriate unit, including but not limited to the discussing of grievances with the exclusive representative." Article IV of the Act, Section 401, 43 P.S. § 1101.401, provides that public employes have the right to engage in collective bargaining.

■ The matter was assigned to a Hearing Examiner who conducted hearings on September 10 and November 16, 2010.[3] In dismissing AFSCME's claims, the Hearing Examiner issued the Proposed Decision and Order on January 13, 2011, finding (1) that the City had a sound arguable basis in the CBA for applying tie-breaking procedures to determine whether Ray or Morgan would be laid off, and (2) that the City's decision to layoff Morgan was based on the application of those procedures and not on anti-union animus. AFSCME filed exceptions, which the Board dismissed, making the PDO absolute and final. This appeal followed.[4]

On appeal, AFSCME first argues that the Board erred as a matter of law in concluding that the layoff did not violate Section 1201(a)(5) of PERA. AFSCME contends that, under the clear wording of Section 17(C) of the CBA, only Morgan was entitled to super seniority because only Morgan served as a union steward *in the unit designated for layoff*. Although Ray was a union steward, she, unlike Morgan, had no role or function serving other District Council 47 employees in the layoff unit. Accordingly, AFSCME argues that the City violated its bargaining rights, and failed to bargain in good faith under section 1201(a)(5), by denying Morgan the benefits of super seniority. AFSCME also makes the related argument that the Board erred by applying the "sound argua-

ble basis" standard to the City's interpretation of the CBA because, in AFSCME's view, the CBA language is clear and does not require any interpretation. AFSCME argues plainly, "There is no contract dispute here." (AFSCME Brief at 13.)

The City argues that Section 17(C) affords super seniority to *all* shop stewards and union officials so long as the unit or class in which they work will be affected by a proposed layoff. Faced with a tie between Morgan and Ray, both union stewards and the only employees working as Departmental Accounting System Specialist, the City applied tie-breaking procedures that resulted in Morgan's layoff. The City contends that it had a sound arguable basis in the CBA for applying those procedures under the circumstances, and that the Board correctly ruled in its favor.

We agree with the City and affirm the Board on this issue.

■ The PLRB exists to remedy violations of statute, *i.e.*, unfair labor practices, and not violations of contract. *Pa. State Troopers Ass'n v. Pa. Labor Relations Bd.*, 761 A.2d 645, 649 (Pa.Cmwlth. 2000). Where a breach of contract is alleged, it should be resolved by an arbitrator using the grievance procedure set forth in the parties' collective bargaining agreement.[5] *Id.* However, the Board is empow-

---

**3.** A total of eight witnesses testified. Three witnesses testified on behalf of AFSCME: Kahim Boles, President of Local 2187; Catherine Scott, President of District Council 47; and David Mora, Vice–President of District Council 47. Five witnesses testified on behalf of the City: Commissioner Tolson; Michael Zaccagni, Deputy Commissioner of the Streets Department; Rene Vargas, a Deputy Director in the Mayor's Office of Labor Relations; Michael McAnally, a Deputy Director of the Office of Human Resources; and Patricia Fitzgerald, a Human Resource Technical Specialist.

**4.** Our scope of review is limited to determining whether there was a violation of constitutional rights, whether an error of law was committed, and whether the Board's necessary findings are supported by substantial evidence. *Capitol Police Lodge No. 85 v. Pa. Labor Relations Bd.*, 10 A.3d 407, 410 n. 4 (Pa.Cmwlth.2010).

**5.** AFSCME filed a class action grievance against the City alleging, *inter alia*, that Morgan's layoff resulted from anti-union animus and was in violation of the CBA. At the time the parties submitted briefs, Morgan's griev-

ered to review an agreement to determine whether the employer has clearly repudiated its provisions, because such repudiation may constitute both an unfair labor practice and a breach of contract. *Id.; Capitol Police Lodge No. 85 v. Pa. Labor Relations Bd.,* 10 A.3d 407, 410–11 (Pa. Cmwlth.2010) (citing *Wilkes–Barre Twp. v. Pa. Labor Relations Bd.,* 878 A.2d 977, 982 (Pa.Cmwlth.2005)); *Millcreek Twp. Sch. Dist. v. Pa. Labor Relations Bd.,* 158 Pa. Cmwlth. 156, 631 A.2d 734, 737–38 (1993) (holding that an employer's unilateral change in the terms and conditions of employment set forth in a collective bargaining agreement is considered a refusal to bargain in good faith and is an unfair labor practice in violation of Section 1201 of PERA).

■■■ A public employer may raise "contractual privilege" as an affirmative defense to a charge of unfair labor practices alleging a failure to bargain in good faith. *Capitol Police Lodge No. 85,* 10 A.3d at 409–10; *Pa. State Troopers Ass'n,* 761 A.2d at 651. The defense calls for "the dismissal of an unfair labor practice charge where the employer establishes a sound arguable basis in the language of the CBA for the employer's claim that its action was permissible under the CBA." *Capitol Police Lodge No. 85,* 10 A.3d at 410; *Pa. State Troopers Ass'n,* 761 A.2d at 651. "Long standing precedent provides that if an employer articulates a sound arguable basis for its interpretation of the parties' CBA, the [Board] will dismiss an unfair labor practices charge based on the claim that an employer violated its bargaining duty." *Capitol Police Lodge No. 85,* 10 A.3d at 410; *Pa. State Troopers Ass'n,* 761 A.2d at 651.

■■■ Here, the parties' differing interpretations of Section 17 of the CBA are central to this dispute and to AFSCME's appeal. Before addressing the parties' arguments, it is useful to discuss the language of the CBA and of the regulations, policies, and procedures relevant to this dispute. Section 17(A)(5) of the CBA provides that "Layoffs shall be in accordance with existing layoff procedures...." (CBA at 27, R.R. at 447a.) The City contends that these procedures are set forth in Philadelphia Civil Service Regulation, Section 16 (Regulation), as adopted in the City of Philadelphia Office of Human Resources Layoff Policies and Procedures (Layoff Policies and Procedures). (F.F. ¶¶ 8–10, R.R. at 48a; Regulation § 16, R.R. at 449a–453a; Layoff Policies and Procedures, R.R. at 458a–495a.) According to the Regulation, once a City department selects a class or unit of employees for layoff (a so-called layoff unit), that department calculates a layoff score for each employee in that class or unit. (Regulation § 16.011, R.R. at 449a.) The layoff score consists of two components: (1) performance points that are based on the employee's performance evaluations, and (2) seniority points that are based on the employee's years of service with the City and in the military. (Regulation §§ 16.012–13, R.R. at 450a–451 a.) The employees in a layoff unit are then ranked in a layoff register according to their layoff scores. (Regulation §§ 16.016, R.R. at 453a.) In case of a tie among employees on the layoff register, the Regulation provides, in pertinent part:

**16.0113—Order of Layoff** . . . .

. . .

**16.01132—**Among permanent employees layoffs shall be made in inverse order according to their combined total of points derived from seniority credit and

---

ance was scheduled for arbitration and there was a hearing pending before an arbitrator.

performance rating credit as computed by the appointing authority.

. . .

### 16.0116—Breaking Ties on Layoff Credit.

When two or more employees have the same combined total of points from seniority credit and performance rating credit, the order of layoff shall be determined by giving preference for retention in the following sequence: (1) employee with the highest report of performance rating credit used in determining order of layoff; (2) employee with greatest total service in the City service.

(Regulation § 16.0113, R.R. at 449a–450a.) The City's Layoff Policies and Procedures track the above-quoted language and adopt the tie-breaking procedure set forth in the Regulation. (Layoff Policies and Procedures at 14, R.R. at 470a.)

Under Section 17(C) of the CBA, shop stewards and elected officials receive a "super seniority" point, so that a shop steward's layoff score is one point higher than the highest point total of any employee in the layoff unit who is not a shop steward or elected official. Section 17(C) provides:

*17.C SUPER SENIORITY FOR DISTRICT COUNCIL 47 SHOP STEWARDS AND ELECTED UNION OFFICIALS*

For layoffs under the system established by Civil Service Regulation 16—LAYOFFS: District Council 47 shop stewards and elected union officials shall be credited with total layoff score points equal to one more than the highest total points of any other employee in their appropriate layoff units and classes.

(CBA at 29, R.R. at 447a.)

Tracking the above-quoted language of the CBA, the City's Layoff Policies and Procedures provide for super seniority for shop stewards and elected union officials. (F.F. ¶ 9, R.R. at 48a; Layoff Policies and Procedures at 14, R.R. at 471a.) The Policies and Procedures also provide for a tie-breaking procedure if a shop steward is the only employee on the layoff list, or if more than one shop steward is on the same layoff register:

*6. Super Seniority for District Council 33 Officers and 47 Stewards and Officials*

District Council 47 shop stewards and elected union officials shall be credited with total layoff score points equal to one more than the highest total points of any other employee in their appropriate layoff units and classes. D.C. 47 Master Agreement 1992–1996—Super Seniority for District Council 47 Shop Stewards and Elected Union Officials.

. . .

If a shop steward is the only employee on the layoff list, no additional points are awarded.

. . .

*When more than one shop steward is on the same layoff register, all stewards are assigned the same numerical layoff score—one point more than the highest score of any other employee on the layoff register. The rank order of the shop stewards is determined by the tie breaking procedure described above.*

(Layoff Policies and Procedures at 14, R.R. at 471a (emphasis added).)

AFSCME contends that Section 17(C) is clear that only a shop steward *in the unit designated for layoff* (here, Morgan) should receive the benefit of super seniority. In other words, AFSCME contends that, although Ray was an employee subject to potential layoff, and although Ray was also a shop steward, "she had no entitlement to super seniority under the rationale of the Board's own precedent"

because she was a shop steward for employees who worked in a different department. (AFSCME Brief at 12.) AFSCME supports its reading of the CBA by relying on a line of cases that AFSCME contends establishes the importance of union stewards and super seniority in collective bargaining: "the true rationale for validating a super seniority provision is found in the important functions served by the recipient of super seniority in providing continuity of representation in carrying out the objectives of the collective bargaining agreement. Thus, those who, like union stewards, assist in resolving grievances on-the-spot are in a special way fulfilling an essential purpose of collective bargaining, *i.e.,* adjusting grievances at their source." (AFSCME Brief at 10–11) (quoting *D'Amico v. National Labor Relations Bd.,* 582 F.2d 820, 825 (3d Cir.1978).) AFSCME stresses that the Board's decision "flies in the face of its own precedents with respect to super seniority and layoff for union stewards and other elected officials" and "undermines the most basic concept of super seniority." (AFSCME Brief at 10–11.)

We disagree with AFSCME's interpretation. There is simply no clear requirement that the super seniority credit created by Section 17(C) is to be given only to shop stewards who serve employees in the unit designated for layoff. To apply Section 17(C) in such a manner is to add words to the CBA, as follows:

District Council 47 shop stewards and elected union officials [*who serve employees in the layoff unit*] shall be credited with total layoff score points equal to one more than the highest total points of any other employee in their appropriate layoff units and classes.

Perhaps recognizing that those additional words are not, in fact, in Section 17(C), and belying its assertion that there is no contract dispute here, AFSCME resorts to interpreting the words "District Council shop stewards and elected union officials" as having a special meaning that elevates a shop steward in the layoff unit above other shop stewards. Such an interpretation is not supported by the plain meaning of Section 17(C), nor is it supported by the precedent on which AFSCME relies. AFSCME cites *Aeronautical Industrial District Lodge 727 v. Campbell,* 337 U.S. 521, 522–23, 69 S.Ct. 1287, 93 L.Ed. 1513 (1949), *National Labor Relations Board v. Joy Technologies Inc.,* 990 F.2d 104 (3d Cir.1993), and *D'Amico v. National Labor Relations Board,* 582 F.2d 820, 825 (3d Cir.1978), which affirm that it is not an unfair labor practice to grant union officials super seniority in a layoff over employees *who hold no role in the union.* None of the cases that AFSCME cites supports its argument that the City committed an unfair labor practice when it did not grant Morgan super seniority over Ray.

Notwithstanding AFSCME's protests that "the most basic concept of super seniority" is under attack, the importance of extending super seniority to shop stewards is not in question. The issues before us are whether the City has clearly repudiated the CBA provisions and whether the City had a sound arguable basis for its action, given the "unusual circumstances" where two shop stewards, and only two shop stewards, were in the unit designated for layoff by the City. *Capitol Police Lodge No. 85,* 10 A.3d at 410–11; *Pa. State Troopers Ass'n,* 761 A.2d at 649.

We find the City did not clearly repudiate the CBA when, under the circumstances here, it did not extend super seniority credit to Morgan. The City also presented a sound arguable basis in the CBA for its action. The City did not afford either Ray or Morgan super seniority credit because both Ray and Morgan

were shop stewards, and they were both subject to potential layoffs in the Streets Department as the only two employees in the layoff unit, which was the position of Departmental Accounting System Specialist. Section 17(C), therefore, applied to both, and neither could have one more super seniority layoff point than the other.

Given that Ray and Morgan were in a tie, the City followed the procedure for breaking ties set forth in the Civil Service Regulations and the Layoff Policies and Procedures. (Layoff Policies and Procedures at 14, R.R. at 471 a.) There is no dispute that, under these procedures, Ray had a higher performance score, a higher seniority score, and a higher total layoff score than Morgan. (F.F. ¶ 11, R.R. at 48a; Streets Department Layoff Register, R.R. at 455a.) Support for applying the tie-breaking procedure is rooted in Section 17(A)(5) of the CBA, which incorporates "existing layoff procedures," and in Section 17(C), which does not expressly set forth how super seniority credit should be applied when two union stewards are subject to layoffs. Under the circumstances, the City has established a sound arguable basis for its actions and we affirm the Board's dismissal of AFSCME's claim under Section 1201(a)(5) of PERA.

■ AFSCME next argues that substantial evidence does not support the Board's finding that Morgan's layoff was not the result of anti-union animus. In dismissing the discrimination charge, the Board ruled:

Absent my ability to ascertain that the City did not follow the proper method of calculating the layoff scores of both Ray and Morgan, there is little left to AFSCME's discrimination case. AFSCME has not shown that absent Morgan's protected activity she would have been treated differently. *St. Jo-*

*seph's Hospital v. PLRB,* 473 Pa. 101, 373 A.2d 1069 (1977).

Moreover, because AFSCME has not shown that the City failed to comply with the super seniority provisions in the parties collective bargaining agreement[,] which incorporated the certain Civil Service Regulations, there is no violation of Section 1201(a)(5) of PERA.

Albeit, some of the City's witnesses were the models of obfuscation. I am not convinced that the Commissioner of the Department of Streets for the City was as ignorant as she professed to be about either Morgan's duties, or the City's contention that Morgan spent too much time on union business. Her attempt to distance herself from knowledge of Morgan's zealous union activities, however, does not establish animus. Likewise, the Deputy Director in the Mayor's Office of Labor Relations was diplomatically vague in his answers to AFSCME's questions, so as to offend no one. But, his recalcitrance does not prove animus, either.

(PDO at 4, R.R. at 50a.)

The Board's analysis shows that although AFSCME may have established that Morgan spent considerable time working on her duties as union steward, and that City officials were aware of that work, the Board weighed the evidence and concluded that Morgan's layoff was the result of the City's layoff policies and procedures, and not any animus. (Final Order at 5, R.R. at 6a ("[T]he Hearing Examiner unequivocally accepted the testimony of the City's witnesses that the decision to layoff Morgan, as opposed to Ray, was strictly a function of the tie-breaking procedure set forth in the City's Layoff Policies and Procedures and Civil Service Regulations."); Testimony of Commissioner Tolson, Sept. 2010 H.T. at 105–106, R.R. at 160a–161a.)

■ AFSCME's appeal challenges the Board's credibility determinations, the weight it afforded certain evidence, and its resolution of conflicting testimony. It is the province of the Board, not this Court, to make those determinations. *St. Joseph's Hospital*, 473 Pa. at 108, 373 A.2d at 1072. Here, the City's layoff policies and procedures, the steps that the City took to follow them, and the financial difficulty that prompted the Streets Department to engage in layoffs are well documented in the record. Accordingly, we find that the Board's conclusions are supported by substantial evidence and we affirm dismissal of AFSCME's claim under 1201(a)(3) of PERA.[6]

■ Finally, in a footnote, AFSCME baldly claims that the City violated Section 1201(a)(1) of PERA. (AFSCME Brief at 18–19 n. 3.) Under Section 1201(a)(1), public employers are prohibited from interfering, restraining, or coercing employees in the exercise of their collective bargaining rights. 43 P.S. § 1101.1201(a)(1). AFSCME has waived this issue by failing to properly raise it on appeal. *Van Duser v. Unemployment Comp. Bd. of Review*, 164 Pa.Cmwlth. 96, 642 A.2d 544, 548 n. 3 (1994) (holding that issues not briefed are waived) (citing *Tyler v. Unemployment Comp. Bd. of Review*, 139 Pa.Cmwlth. 598, 591 A.2d 1164 (1991)). In any event, AFSCME cites no record evidence, and makes no argument whatsoever, that the City's actions have the tendency to coerce or interfere with protected activities of Morgan or District Council 47 as a whole. As a result, we affirm the Board's dismissal of this claim.

---

6. AFSCME stresses that the City Layoff Policies and Procedures are not part of the CBA and were never subject to collective bargaining between the union and the City. That may be so, however, even had those procedures not existed, the City would have been forced to apply some interpretation of Section 17(C),

### ORDER

AND NOW, this 22nd day of March, 2012, the order of the Pennsylvania Labor Relations Board in the above-matter is affirmed.

which does not address the specific circumstances of this case. The fact that the City resorted to a written tie-breaking procedure, whether or not the CBA incorporated that procedure, tends to show that the City was acting based on its reasonable interpretation of the CBA, and not on anti-union animus.